**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
MARLON CASTRO, OCTAVIO RANGEL,
MARTIN VASQUEZ, ALFREDO MARTINEZ,
RODOLFO MENDEZ, GERARDO ANGULO, JUAN
MARTINEZ, JOSE CERVANTES, SERGIO
SANCHEZ, ISRAEL SANCHEZ, MARTINE PEREZ,     **ECF Case**
GUILLERMO MENDOZA, OMAR CASTILLO, and
AMANDO MARTINEZ,  individually and on behalf    **FLSA § 216(b) Collective**
of others similarly situated,                   **Action**

                              *Plaintiffs*,     **FRCP Rule 23 Class**
                                                **Action**

                    -against-                   **07 CV 4657 (RWS)(DFE)**

SPICE PLACE, INC., SPICE AVE., INC.,
BANGKOK PALACE II, INC., SPICE CITY, INC.,
SPICE WEST, INC., KITLEN MANAGEMENT,
KITTIGRON LIRTPANARUK, and YONGYUT
LIMLEARTVATE,

                              *Defendants*.
------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION
TO PROCEED AS A COLLECTIVE ACTION UNDER THE FLSA
AND FOR CLASS CERTIFICATION UNDER FRCP 23**

# TABLE OF CONTENTS

I.   Preliminary statement and relief requested …………………………….........................2

II.  Facts …………………….……………………………………………………….....3

     A.  The Parties ……….………….……………………………………………....3

     B.  Facts relevant to the requirements of collective or class action status ...…….6

          1.  "Numerosity" ……………………………………………………...6

          2.  "Similarly Situated" ……………………………………………...6

          3.  The common questions of law and fact ……………………….….…7

III. Argument……………………………………………………………..........................8

     POINT 1.     SINCE SPICE DELIVERY PERSONNEL ARE "SIMILARLY
                     SITUATED" BY BEING PAID $3 OR LESS PER HOUR FOR 74 OR
                     MORE HOURS PER WEEK DOING FOOD PREPARATION AND
                     CLEAN UP IN ADDITION TO DELIVERY WORK, THIS ACTION
                     SHOULD BE CERTIFIED AS A COLLECTIVE ACTION ……..…..8

     POINT II.     SINCE OTHER OF SPICE'S DELIVERY PEOPLE NEED
                     ACCURATE AND TIMELY NOTICE TO DETERMINE WHETHER
                     TO OPT IN, PLAINTIFFS SHOULD BE PERMITTED TO ISSUE
                     THEIR PROPOSED NOTICE OF PENDENCY AND CONSENT TO
                     JOIN THE PROSPECTIVE CLASS ……...……………………....10

     POINT III.     SINCE PLAINTIFFS HAVE DEMONSTRATED THAT OTHER
                     SPICE DELIVERY PERSONNEL ARE ENTITLED TO ACCURATE
                     AND TIMELY NOTICE OF THIS COLLECTIVE ACTION, THIS
                     COURTSHOULD GRANT PLAINTIFFS' REQUEST FOR
                     PRODUCTION OF CONTACT INFORMATION FOR EACH
                     PROSPECTIVE COLLECTIVE ACTION MEMBER TO ENSURE
                     PROMPT AND ACCURATE NOTIFICATION OF SUCH
                     POTENTIAL PLAINTIFFS ……………………………………………13

     POINT IV.     SINCE THE 24 PLAINTIFFS ARE SIMILARLY SITUATED TO AT
                     LEAST 36 OTHER POTENTIAL PLAINTIFFS, THE CLASS IS
                     SUFFICIENTLY NUMEROUS TO SATISFY THE NUMEROSITY
                     REQUIREMENT OF RULE 23, AND JOINDER OF ALL
                     PLAINTIFFS IS IMPRACTICABLE …………..…………………..14

**POINT V.**      **PLAINTIFFS SATISFY THE COMONALITY REQUIREMENT OF RULE 23 SINCE ALL PLAINTIFFS SHARE COMMON QUESTIONS OF LAW AND FACT REGARDING SPICE'S POLICIES OF DENYING MINIMUM WAGES AND OVERTIME PAYMENTS, AND VIOLATINGTHE SPREAD OF HOURS WAGE ORDER** …………...16

**POINT VI.**     **SINCE EACH CLASS MEMBER'S CLAIM ARISES FROM THEIR PERIOD OF EMPLOYMENT WITH SPICE, AND EACH CLASS MEMBER WAS LIKELY DENIED PAY THAT THEY WERE OWED BY SPICE, PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLASS** ……………………………………………………………..17

**POINT VII.**    **SINCE PLAINTIFFS' CLAIMS, LIKE THE CLAIMS OF THE CLASS, ARISE UNDER NEW YORK MINIMUM WAGES, OVERTIME, AND SPREAD OF HOURS LAWS, AND CLASS COUNSEL HAVE SUBSTANTIAL EXPERIENCE IN LABOR CASES SIMILAR TO THE PRESENT CASE, PLAINTIFFS ADEQUATELY REPRESENT THE CLASS** ……..…………………………………..…19

**POINT VIII.**   **SINCE SPICE'S FAILURE TO PAY MINIMUM WAGES, OVERTIME WAGES, AND SPREAD OF HOURS WAGES IS AN ISSUE COMMON TO ALL CLASS MEMBERS, AND ALL CLASS MEMBERS' CLAIMS ARISE DIRECTLY FROM THIS ISSUE, IT PREDOMINATES OVER ANY VARIANCE IN INDIVIDUAL CLASS MEMBERS' DAMAGES, THEREFORE, THE COURT SHOULD GRANT CLASS CERTIFICATION**........................................................20

**POINT IX.**     **SINCE PLAINTIFFS ARE UNLIKELY AND UNABLE TO PURSUE INDIVIDUAL CLAIMS, AND COURTS FAVOR CLASS ACTIONS WHERE, AS HERE, PLAINTIFFS HAVE LIMITED RESOURCES AND A LIMITED COMMAND OF ENGLISH, A CLASS ACTION IS SUPERIOR TO ANY OTHER METHOD OF ADJUDICATION** .......22

**POINT X.**      **SINCE THE FEDERAL AND STATE LAW CLAIMS IN THIS CASE ARISE FROM SPICE'S POLICIES AND PRACTICES OF DENYING ITS DELIVERY PERSONNEL MINIMUM WAGES, OVERTIME WAGES, AND SPREAD OF HOURS WAGES, IN THE INTEREST OF JUDICIAL ECONOMY, AND TO REDUCE THE CHANCE OF INCONSISTENT FINDINGS, THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NEW YORK LABOR LAW CLAIMS** …...…………………………………...23

**IV. CONCLUSION** .……………………………………………….........................25

# TABLE OF AUTHORITIES

## Statutes

F.L.S.A. § 216(b)……………………………………………………………….………2, 11, 25

Fed. R. Civ. P. 23(a)………………………………………….....…2, 12, 14, 15, 16, 17, 19, 21

Fed. R. Civ. P. 23(b)…………………………………………….....2, 13, 14, 19, 21, 22, 23

Fed. R. Civ. P. 23(g)………………………………………………………………………..20

29 U.S.C. 255(a)…………………………………………………………………………12

12 N.Y.C.R.R. § 137………………………………………………………………3, 14, 18

12 N.Y.C.R.R. § 142……………………………………………………………………………3

N.Y. Lab. Law §
198……………………………………………………………………………..12

N.Y. Lab. Law §§ 650 *et seq*…………………………..………………………………………14, 18

## Cases

Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82 (S.D.N.Y. 1989)..…………………………16, 19

Ansoumana v. Gristedes Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001)……………………24

Braunstein v. Eastern Photographic Labs., Inc., 600 F.2d 335 (2d Cir.1978)……………..……..11

Caridad v. Metro-North Commuter R.R., 191 F.3d 283 (2d Cir. 1999)……………………........18

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2d Cir. 1995)…………………………15

Cuzco v. Orion Builder, Inc., 477 F. Supp.2d 628 (S.D.N.Y. 2007)…………………………9, 11

Duchene et al. v. Michael L. Cetta, Inc., d/b/a/ Sparks Steak House, 244 F.R.D. 202 (S.D.N.Y. 2007)…………………………………………………………………………..24

General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147 (1982)……………………………..21

Harrington v. Education Mgmt. Corp., 2002 WL 1343753 (S.D.N.Y. 2002)……………………..12

Heagney v. European Am. Bank, 122 F.R.D. 125 (E.D.N.Y. 1988)……………………………...8

Hirschfeld v. Stone, 193 F.R.D. 175 (S.D.N.Y. 2000)…………………………………14, 15

Hoffman v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y.1997)……………………………………10

Hoffman-LaRoche v. Sperling, 493 U.S. 165 (1989)…………………………………11, 12, 13

In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992)…………………..18, 20

In re Initial Public Offering Secs. Litig., 471 F.3d 24 (2d Cir. 2006)………………….…….…..14

In re Omnicom Group Secs. Litig., 2007 WL 1300781 (S.D.N.Y. 2007)…...………...…….…22

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007)…………….21, 22, 24

Jacobsen v. The Stop & Shop Supermarket, 2003 WL 21136308 (S.D.N.Y. 2003)…………..8, 9

Krueger v. New York Telephone Co., 1993 WL 276058 (S.D.N.Y. 1993)………………….....13

Kumar Realite v. Ark Restaurants Corp, 7 F. Supp 2d 303 (S.D.N.Y. 1998)…………………...12

Lee v. ABC Carpet & Home, 236 F.R.D. 193 (S.D.N.Y. 2006)………………………………..8

Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357 (S.D.N.Y. 2007)……………………..8

Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997)………………………………………...14, 17

McBean v. City of New York, 228 F.R.D. 487 (S.D.N.Y. 2005)………………………………..22

Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield, 938 F. Supp. 1131 (E.D.N.Y. 1996)……………………………………………………………………………………17

Mentor v. Imperial Parking, 246 F.R.D. 178 (S.D.N.Y. 2007)……………………9, 11, 14, 17, 21

Meyer v. MacMillan, 95 F.R.D. 411 (S.D.N.Y. 1982)……………………………………………..19

Nathan Gordon Trust v. Northgate Exploration, Ltd., 145 F.R.D. 105 (S.D.N.Y. 1993)………..17

Newman v. RCN Telecom Services, Inc., 238 F.R.D. 57 (S.D.N.Y. 2006)…………………14, 15

Patton v. Thomson Corp., 364 F. Supp. 2d 263 (E.D.N.Y. 2005)…………………………….....10

Promisel v. First Amer. Artificial Flowers, 943 F.2d 251 (2d Cir.1991)………………………..24

Robidoux v. Celani, 987 F.2d 931 (2d. Cir. 1993)…………………………………………15, 16, 18

Robinson v. Metro-North Commuter R.R., 267 F.3d 147 (2d Cir. 2001)………………………..18

Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590 (2d Cir. 1986)…………………………………21

Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656 (2d Cir. 1978)………………14

Tennie v. City of New York Dep't of Soc. Servs., 1987 WL 6156 (S.D.N.Y. 1987)……………16

Torres v. Gristede's Operating Corp., 2006 WL 2819730 (S.D.N.Y. 2006)…………..…22, 23, 24

Toure v. Central Parking Sys. of New York, 2007 WL 2872455 (S.D.N.Y. 2007)……………..10

Trautz v. Weisman, 846 F. Supp. 1160 (S.D.N.Y. 1994)…………………………………………..18

Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193 (S.D.N.Y. 1992)………………………………..17

Trinidad v. Breakaway Courier Sys., Inc., 2007 WL 103073 (S.D.N.Y. 2007)………………....12

Velez v. Majik Cleaning Serv., Inc., 2005 WL 106895 (S.D.N.Y. 2005)………………….........20

## <u>Other Authorities</u>

7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (1998)…......21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
MARLON CASTRO, OCTAVIO RANGEL,
MARTIN VASQUEZ, ALFREDO MARTINEZ,
RODOLFO MENDEZ, GERARDO ANGULO, JUAN
MARTINEZ, JOSE CERVANTES, SERGIO
SANCHEZ, ISRAEL SANCHEZ, MARTINE PEREZ,          **ECF Case**
GUILLERMO MENDOZA, OMAR CASTILLO, and
AMANDO MARTINEZ,  individually and on behalf     **FLSA § 216(b) Collective**
of others similarly situated,                    **Action**

                            *Plaintiffs*,        **FRCP Rule 23 Class**
                                                 **Action**
                    -against-
                                                 **07 CV 4657 (RWS)(DFE)**
SPICE PLACE, INC., SPICE AVE., INC.,
BANGKOK PALACE II, INC., SPICE CITY, INC.,
SPICE WEST, INC., KITLEN MANAGEMENT,
KITTIGRON LIRTPANARUK, and YONGYUT
LIMLEARTVATE,

                            *Defendants*.
-----------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
PROCEED AS A COLLECTIVE ACTION UNDER THE FLSA AND FOR
CLASS CERTIFICATION UNDER FRCP 23**

Michael A. Faillace [MF-8436]                Peter G. Eikenberry [PE-7257]
MICHAEL FAILLACE & ASSOCIATES, P.C.          74 Trinity Place, Suite 1609
110 East 59th Street, 32nd Floor             New York, NY 10006
New York, New York 10022                     Telephone: (212) 385-1050
Telephone: (212) 317-1200                    *Attorneys for Plaintiffs*
*Attorneys for Plaintiffs*

                                             John A. Karol
                                             Robert C. Ruhlin
                                             *Of Counsel*

                                             Nathaniel Arden
                                             *On the Brief*

## I.    Preliminary statement and relief requested

Plaintiffs (now 25 in number) and other putative class members are current and former "delivery people" employees of a chain of restaurants operated by defendants ("Spice.")  Although Spice required plaintiffs and other "delivery people" to spend much of their working time performing tasks unrelated to delivery—including food preparation, stocking the storage room, and cleaning of the restaurant premises —Spice classified and compensated plaintiffs as "delivery" personnel.  Spice paid plaintiffs only $70 to $240 in cash per week despite their working 74 hours to more than 84 hours per week, and their being required to use part of their earnings to purchase and maintain bicycles, mobile phones, and uniforms for use in their employment.

Plaintiffs move:

(1) for certification of a collective action under FLSA §216(b), or at the minimum a conditional certification under FLSA §216(b),

(2) for leave to circulate a notice of pendency and consent to join under FLSA 216(b) to all employees currently or formerly employed by Spice,

(3) to compel Spice to furnish the names, last known physical addresses, and telephone numbers of the prospective individual employees in the proposed collective action, so as to facilitate distribution of the notice of pendency and consent to join, and

(4) for class certification under Rule 23 (a), and (b)(3) as for their claims under the New York Labor Law (minimum wages order, overtime wage order, and spread of hours wage order.)

Plaintiffs bring their New York labor law minimum wages, overtime, spread-of-hours, and liquidated damages claims on behalf of all persons (the "New York class") who are or were employed by Spice in the State of New York, on or after the date that is six years before the filing of the complaint in this case, June 2001, to entry of judgment in this case (the "New York class period").  Complaint ¶ 54.

Under New York law, "spread of hours" is the interval between the beginning and end of an

employee's workday; it includes working time plus time off for meals and intervals off duty. 12

NYCRR § 137-3.11(a)(4).  New York's spread of hours regulation requires employers to pay "one

hour's pay at the basic minimum hourly wage rate, in addition to the minimum wages required in

this Part for any day in which the spread of hours exceeds 10 hours."  12 NYCRR § 142-2.4(a).

## II.    Facts

### A.    The parties

There are 14 named plaintiffs in the complaint.  In addition, since the inception of this

action, an additional 10 prospective plaintiffs have filed consents to become party plaintiffs under

the FLSA. <u>See</u>, docket entries nos. 1, 2-6, 34-5, 49-50.  Spice's policies as to payment of delivery

people are illustrated in the following summaries of the affidavits of fifteen plaintiffs, all of whom

are or were employed as delivery people at Spice restaurants:

> Plaintiff Omar Castillo worked approximately 86 hours per week, but was paid only
> $70 to $140 per week.  (Ex. K, ¶¶ 6, 9)[*].  He knew of 13 other employees who
> worked the same hours as he did. (<u>Id.</u> at ¶ 5).
>
> Plaintiff Martine Perez worked approximately 80 hours per week, but was paid only
> $180 per week.  (Ex. L, ¶¶ 4, 7). He knew four or five other delivery people who
> worked similar hours to his and who received the same pay as he did. (<u>Id.</u> at ¶ 4).
>
> Plaintiff Marlon Castro worked approximately 78 hours per week, but was paid only
> $70 to $140 per week.  (Ex. I, ¶¶ 5, 8, 11).
>
> Plaintiff Guillermo Fragosa Mendoza worked approximately 78 hours per week, but
> was paid only $150 per week (Ex. M, ¶¶10-11).  On numerous occasions, his
> manager required that Mr. Mendoza 'clock-out' at least an hour before he finished
> working. (<u>Id.</u> at ¶ 18). He met 15 other delivery people who had the same schedule
> and responsibilities as he did. (<u>Id.</u> at ¶ 17).
>
> Plaintiff Jose Cervantes worked approximately 78 hours per week, but Spice paid
> him only $180 per week. (Ex. P, ¶¶ 4, 13).  He knew of nine other co-workers who
> worked the same hours as he did. (<u>Id.</u> at ¶ 12).  The manager often required him and

_____

[*] Exhibits are attached to the affidavit of Peter G. Eikenberry, sworn to on May 20, 2008, and are referred to hereinafter
as "Ex. __".

the other delivery people to swipe out with their timecards while they still had work to do. (Id. at ¶ 23).

Plaintiff Ramiro Lopez stated that he worked about 77 hours per week, and that Spice paid him $160 per week. (Ex. E, ¶¶ 16, 17).  He named five other delivery people who worked hours similar to his. (Id. at ¶¶ 27—29).

Plaintiff Martin Vasquez stated he worked from 78 to 84 hours per week, but Spice only paid him between $180 and $210 per week. (Ex. Q, ¶¶ 5—8, 15—20).   The chef often instructed him to swipe out with his timecard before he finished working; he also saw the chef alter his start and end times in the computer. (Id. at ¶ 29, 43). He worked with 13 other delivery people who worked similar hours to his, and who were not paid for any overtime. (Id. at ¶¶ 23, 24).

Plaintiff Juan Martinez works approximately 78 hours per week, and earns from $180 to $210 each week. (Ex. N, ¶¶ 5, 11). On several occasions, he witnessed two Spice chefs altering his start and stop times on the computer. (Id. at ¶ 28). His paychecks did not accurately reflect the number of hours he worked. (Id. at ¶ 22). He knows of ten other delivery people who worked hours similar to his. (Id. at ¶ 31).

Plaintiff Israel Rodriguez Sanchez worked approximately 76 hours per week, but was paid only $180 to $240 per week.  (Ex. G, ¶¶ 4, 10). He named nine other delivery people who worked the same hours as he did. (Id. at ¶ 9).

Plaintiff Rodolfo Mendez stated he worked approximately 74 hours per week, and received between $180 and $240 per week. (Ex. O, ¶¶ 4, 6, 13).  The chef often forced him and other delivery people to 'clock out' before they were done working. (Id. at ¶ 25).  He also saw a chef named Pui change his start and stop times on the computer. (Id. at ¶ 29).  He reported he knew of 10 other co-workers who worked similar schedules as he did. (Id. At ¶ 12).

Opt-in plaintiff Humberto Badillo Morales worked approximately 78 hours per week, but was paid only $150 per week.  (Ex. C, ¶¶ 4, 8).  He named six other Spice employees who had the same duties and worked the same hours as he did.  (Id. at ¶ 9).

Opt-in plaintiff Caterino de los Santos worked approximately 77 hours per week, but was paid only $160 per week.  (Ex. F, ¶¶ 4, 9).

Opt-in plaintiff Jorge Rosas worked approximately 77 hours per week, but is paid only $160 per week.  (Ex. D, ¶¶ 4, 9).

Opt-in plaintiff Jose Castillo works approximately 77 hours per week  (Ex. H, ¶ 4). His starting salary was $225 cash per week, but he is now paid approximately $134 per week by check.  (Id. at ¶ 7).

Opt-in plaintiff Humberto Otclita worked approximately 78 hours per week, but was paid only $130 to $140 per week. (Ex. B, ¶¶ 4, 8). He named five other delivery people who worked the same hours as he did. (Id. at ¶ 9).

All of Spice's delivery persons received tips from customers, but they were not told that the tips would be counted toward their salaries. (Ex. B, ¶ 10; Ex. C, ¶10; Ex. D, ¶ 11; Ex. E, ¶ 22; Ex. F, ¶ 11; Ex. G, ¶ 11; Ex. H, ¶¶ 9-10, 15; Ex. I, ¶¶ 9, 19; Ex. J, ¶ 16; Ex. K, ¶¶ 10, 18; Ex. L, ¶¶ 8-10, 14; Ex. M, ¶ 13; Ex. N, ¶ 30; Ex. O, ¶ 14; P, ¶ 14; Ex. Q, ¶ 49). They were also required to perform many additional duties—including washing dishes, food preparation, cleaning and mopping the restaurant and kitchen, taking out the trash, setting up the seating area, and stocking the storage room. (Ex. B, ¶ 6; Ex. C, ¶6; Ex. D, ¶ 6; Ex. E, ¶ 18; Ex. F, ¶ 6; Ex. G, ¶ 7-8; Ex. H, ¶ 5; Ex. I, ¶ 6; Ex. J, ¶ 5; Ex. K, ¶ 7; Ex. L, ¶ 5; Ex. M, ¶ 15; Ex. N, ¶ 9; Ex. O, ¶¶ 9—11; Ex. P, ¶¶ 8, 10, 11; Ex. Q, ¶¶ 9—13).

Spice never requested plaintiffs' social security numbers, and instead, arbitrarily selected social security numbers under which Spice paid plaintiffs. (Ex. D, ¶ 14; Ex. E, ¶¶ 9, 25; Ex. M, ¶ 12; Ex. N, ¶ 23; Ex. O, ¶ 20; Ex. P, ¶¶ 16, 19; Ex. Q, ¶ 35). In approximately January 2006, the State of New York Office of the Attorney General initiated an audit of Spice's employment and compensation practices. Eikenberry Aff. ¶ 4. Thereafter, beginning around February 2006, Spice forced plaintiffs to work a few days a week at one Spice restaurant under one social security number, and work the remaining few days at a different Spice restaurant under another social security number arbitrarily supplied by Spice. (Ex. D, ¶ 15; Ex. E, ¶¶ 23, 24; Ex. G, ¶¶ 14—16; Ex. M, ¶¶ 8, 9, 12; Ex. O, ¶¶ 18, 19; Ex. N, ¶¶ 20, 21; Ex. P, ¶ 17; Ex. Q, ¶¶ 30, 31, 33; Complaint ¶ 42).

The defendant corporations (the "Spice group") are comprised of six corporations, organized and existing under the laws of the State of New York, that act in partnership with one

another in the operation and management of a chain of Thai restaurants in New York.[1]  The Spice

group is owned and operated by individual defendants Kittigron Lirtpanaruk and Yongyut

Limleartvate, who are or were individuals engaged in conducting business in New York through

the Spice group, doing business with different trade names, and who are sued as individuals that

operated as directors and officers or agents of the Spice group. (Complaint ¶¶ 3, 29-35, and 43-44.)

Plaintiffs allege that the individual defendants and the Spice group operated as joint employers of

plaintiffs.  (Complaint ¶¶ 44-46.)[2]

### B.    Facts relevant to the requirements of collective or class action status

1)  **"Numerosity."**  Twenty-five delivery people have joined this suit; 17 of

whom are not currently employed by Spice (Ex. D, ¶ 3; Ex. E, ¶ 3; Ex. H, ¶ 3; Ex. J, ¶ 3; Ex. M, ¶

3; Ex. N, ¶ 3; Ex. O, ¶ 3; Ex. P, ¶ 3), and only six of whom who have been employed by Spice for

the entire respective periods of the relevant statutes of limitation. (Ex. D, ¶ 3; Ex. E, ¶ 3; Ex. H, ¶ 3;

Ex. J, ¶ 3; Ex. K, ¶ 3; Ex. O, ¶ 3). Plaintiffs describe as many as 100 others who were employed as

delivery people during the relevant periods.  (Ex. B, ¶ 9; Ex. C, ¶ 9; Ex. D, ¶ 8; Ex. E, ¶¶ 27, 28;

Ex. F, ¶ 8; Ex. G, ¶ 9; Ex. K, ¶ 5; Ex. L, ¶ 4; Ex. M, ¶ 17; Ex. N, ¶ 31; Ex. O, ¶ 12; Ex. P, ¶ 12; Ex.

Q, ¶ 23).  Other persons replaced plaintiffs who are no longer employed by Spice, and still others

preceded worked at Spice prior to those plaintiffs' respective arrivals.  The NYS attorney general

has investigated Spice, and the results produced to the attorney general will probably verify that the

total number of plaintiffs is at least 60. Eikenberry Aff. ¶ 4; Complaint ¶ 50.

2)  **"Similarly situated."**  Sixteen plaintiffs have submitted affidavits as to Spice's practice of

paying delivery people small amounts in cash for working approximately 74 to 86 hours per week.

---

[1] The six corporations include: Spice Place, Inc., Spice Ave, Inc., Bangkok Palace II, Inc., Spice City, Inc., Spice West, Inc., and Kitlen Management, Inc (Complaint ¶¶ 2, 24-29, 44.)
[2] By stipulated order on June 28, 2007, plaintiffs agreed to dismiss all claims as against defendants Juttana Rimreartwate, Thanadham Thaneesaengsiri, Karnda Vajirabanjong, Kevin Leathers, and Yuanyong Rimreartwate.  See 6/28/07 Notice of Dismissal & Stipulation and Order, Docket No. 27.

<u>See</u> Ex. B—Q.  The affidavits refer to 100 other employees who were paid in a similar manner in Spice restaurants where the affiants worked. (Ex. B, ¶ 9; Ex. C, ¶ 9; Ex. D, ¶ 8; Ex. E, ¶¶ 27, 28; Ex. F, ¶ 8; Ex. G, ¶ 9; Ex. K, ¶ 5; Ex. L, ¶ 4; Ex. M, ¶ 17; Ex. N, ¶ 31; Ex. O, ¶ 12; Ex. P, ¶ 12; Ex. Q, ¶ 23).  It is beyond dispute that Spice did not pay a minimum wage, let alone overtime or New York State spread of hours wages, to plaintiffs and other Spice delivery people.  Further, Spice cannot verify that it kept records reflecting the hours plaintiffs and other delivery people worked.  Similarly, there is no dispute that Spice failed to properly record the amounts it paid to plaintiffs and other delivery people.

   3) **The common questions of law and fact.**  There are questions of law and fact common to the New York class which predominate over any questions solely affecting individual members of the class, including:

   a. what proof of hours worked is sufficient where Spice fails in their duty to maintain time records;

   b. what were the policies, practices, programs, procedures, protocols and plans of Spice regarding payment of wages for all hours worked;

   c. what were the policies, practices, programs, procedures, protocols and plans of Spice regarding payment of at least minimum wages for all hours worked;

   d. whether Spice failed and/or refused to pay plaintiffs the minimum wages and overtime at the premium rate within the meaning of the New York Labor Law;

   e. whether Spice failed and/or refused to pay plaintiffs "Spread of Hours" Pay;

   f. at what common rate, or rates subject to common methods of calculation, were and is Spice required to pay the class members for their work; and

   g. what are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wages and overtime work.

Complaint ¶ 60.

III.    **Argument**

POINT I

**SINCE SPICE DELIVERY PERSONNEL ARE "SIMILARLY SITUATED" BY BEING PAID $3 OR LESS PER HOUR FOR 74 OR MORE HOURS PER WEEK DOING FOOD PREPARATION AND CLEAN UP IN ADDITION TO DELIVERY WORK, THIS ACTION SHOULD BE CERTIFIED AS A COLLECTIVE ACTION**

Since plaintiffs and all other of Spice's delivery personnel were similarly mistreated by Spice's failure to pay minimum wages, overtime wages, and spread of hours wages, the Court should grant this collective action certification, plaintiffs and other Spice delivery personnel are "similarly situated" for FLSA purposes. See Jacobsen v. The Stop & Shop Supermarket Co., 2003 WL 21136308, at *3 (S.D.N.Y. May 15, 2003) ("When an employee is not paid the overtime compensation required by Section 207(a)(1), the employee may bring suit on behalf of himself 'and other employees similarly situated.'" (citation omitted)). The burden for demonstrating that plaintiffs are similarly situated is "very low" at the notice stage. Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357 at 367 (S.D.N.Y. 2007). Notably, putative class members need not be identically situated to potential class members. Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). Plaintiff need only make a "modest factual showing" that plaintiff and potential collective action members were victims of "a common policy or plan that violated the law." Lee v. ABC Carpet & Home, 236 F.R.D. 193 at 197 (S.D.N.Y. 2006).

Spice's policies and practices included, *inter alia*, (1) mischaracterizing plaintiffs as "delivery people," subject to lower rates of pay, while delivery was only about half of the work duties assigned to plaintiffs and prospective class; (2) failing to pay any, much less the legally required, overtime wages; (3) failing to maintain accurate employee records, including accurate wages, overtime pay, or hours worked, (4) evading the labor laws by disguising plaintiffs' and the

prospective class members' actual overtime and employee hours worked by shifting plaintiffs and the prospective class members between stores in the same week, and recording their work separately, (5) routine under-reporting of actual hours worked by plaintiffs, (6) reporting of hours worked under multiple, false social security numbers or names, and (7) recording separate, arbitrarily selected social security numbers for single employees to facilitate these practices.

Additionally, a court may certify a collective action under the FLSA on a conditional basis early in the litigation. Cuzco v. Orion Builder, Inc., 477 F. Supp.2d 628 (S.D.N.Y. 2007). In such a procedure, the court reviews the pleadings and affidavits, and "if the court finds that proposed class members are similarly situated, the class is conditionally certified." Id., at 632.

Here, plaintiffs and potential plaintiffs were all victims of Spice's common policy or plan that violated the law. Even though plaintiffs worked different hours and at different Spice restaurants, Spice had a company-wide policy of denying employees full and proper minimum wages, overtime wages, and spread of hours wages. Conditional certification is routinely granted under similar circumstances. See e.g. Mentor v. Imperial Parking, 246 F.R.D. 178 at 181 (S.D.N.Y. 2007) (Conditional FLSA collective action granted where "[p]laintiff has presented declarations asserting that Defendants had a policy of denying overtime wages to parking attendants, which they concealed by, *inter alia*, transferring employees between garages and issuing separate W-2s for work performed in different locations.").

Moreover, it does not matter that minimal factual differences potentially exist as between duties performed by the plaintiffs, their dates of employment, or in their hours worked. See, e.g., Jacobsen, 2003 WL 21136308, at *3-4 (class of trainees and back-up managers); Mentor at 182 (fact that some employees might have received partial overtime when compared with others, or had differing dates and hours of employment, will not defeat class certification as all are "victimized by

Defendants' unlawful policies"); see also, Toure v. Central Parking Sys. of New York, 2007 WL 2872455, at *3 (S.D.N.Y. Sept. 27, 2007) (declarations asserting that defendants "had an express policy of forcing garage attendants . . . to work more than forty hours per week and refusing to pay them for the additional time" was sufficient to meet the burden of showing plaintiffs and other employees "were victims of a common policy or plan that violated the law," regardless of the fact that dates of employment and hours worked were "unique to each employee.") (citing Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y.1997)).

Since plaintiffs and all other of Spice's delivery personnel were similarly mistreated by Spice's failure to pay minimum wages rates, overtime rates, and spread of hours wages, the Court should grant collective action certification.

## POINT II

### SINCE OTHER OF SPICE'S DELIVERY PEOPLE NEED ACCURATE AND TIMELY NOTICE TO DETERMINE WHETHER TO OPT IN, PLAINTIFFS SHOULD BE PERMITTED TO ISSUE THEIR PROPOSED NOTICE OF PENDENCY AND CONSENT TO JOIN THE PROSPECTIVE CLASS

Since potential plaintiffs need accurate and timely notice to determine whether to opt in to this collection action, and because delay may deprive potential plaintiffs of the opportunity to make an informed decision, plaintiffs should be permitted to issue the proposed notice to join the prospective class. See Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266-67 (E.D.N.Y. 2005) ("The threshold issue in deciding whether to authorize [an FLSA collective action] is to determine whether other employees to whom such notice might be sent are 'similarly situated.'") (citation and internal quotation omitted). In deciding whether to authorize a collective action notice under the FLSA, the court need only consider a single issue: whether the other members of the proposed collective action are "similarly situated," which is the same analysis as the certification itself. Id. at

266-67.  Therefore, plaintiffs request the Court to authorize the dissemination of the proposed

notice (Ex. U) to the prospective class members.

Although there are no provisions in FLSA 216(b) that specifically address sending notice to

potential opt-in plaintiffs, "[i]t is well established that district courts may authorize the sending of

notice to potential opt-in plaintiffs in appropriate cases where a collective action has been brought

under § 216(b) of the FLSA." Cuzco v. Orion Builders, Inc., 477 F.Supp.2d 628 at 634 (S.D.N.Y.

2007) (citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S.Ct. 482 (1989).

Upon a court's determination that the proposed class members are similarly situated, "potential

class members are then notified and given an opportunity to opt-in to the action." Cuzco, at 632

(S.D.N.Y. 2007).  Moreover, court-authorized notice "comports with the broad remedial purpose of

the [FLSA], …as well as with the interest of the courts in avoiding multiplicity of suits."

Braunstein v. Eastern Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir.1978).

In situations similar to the case at bar, courts have authorized sending notice to potential

plaintiffs. Mentor at 181-2, (S.D.N.Y. 2007).  In Mentor, the court authorized FLSA notice where

the plaintiffs submitted affidavits stating defendants had a policy of denying overtime wages to

employees, which they concealed by transferring employees between worksites, and issuing

separate W-2s for work performed at different locations. Id.  Here, plaintiffs have submitted sixteen

affidavits that attest to Spice's unlawful policies of denying employees minimum wages, overtime

wages, and spread of hours wages.  Consequently, the court should grant plaintiffs' motion to

authorize the proposed notice of pendency and consent to join the prospective class.

Plaintiffs request that notification be given to every person who has been employed by

Spice as a delivery person, since June 1, 2004, which is within three years before the

commencement of this lawsuit.  While the statute of limitations for bringing claims under the FLSA

is normally two years, for willful violations of the FLSA the statute of limitations is extended to

three years. 29 U.S.C. 255(a).  Plaintiffs here claim that Spice's violations of the FLSA were

willful.

Additionally, under New York Labor Law § 198(3), courts have authorized notice to go

back six years for similarly situated employees who worked in New York State. N.Y. Lab. Law §

198(3).  Even without a determination of an intentional violation, courts have found notice

extending to workers employed six years prior is appropriate. Harrington v. Education Mgmt.

Corp., 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002); see N.Y. Lab. Law § 198(3); see also

Kumar Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998) (authorizing

plaintiffs in collective action to provide notice to employees who worked at defendants' New York

restaurants within the last six years of the pendency of the lawsuit as "[i]t will then be up to those

individuals to decide whether they wish to opt-in to this action").

Plaintiffs and potential plaintiffs must receive accurate and timely notice of this action, "so

that they can make informed decisions about whether to participate." Hoffmann-La Roche, Inc.,

493 U.S. 165, 169- 70 (1989).  Notice to putative class members should be given as soon as

possible because, "potential plaintiffs may be eliminated as each day goes by," due to the statute of

limitations.  Trinidad v. Breakaway Courier Sys., Inc., 2007 WL 103073, at *3 (S.D.N.Y. Jan. 12,

2007) (citation omitted).  If potential plaintiffs are not given prompt notice of this action, they will

be unable to secure compensation to which they are entitled, and which Spice has unlawfully

withheld. Complaint ¶ 52.

Because with additional plaintiffs, the total number of plaintiffs will probably reach 60 or

more, all of whom could bring separate FLSA actions against Spice, and plaintiffs have submitted

sixteen affidavits describing Spice's unlawful policy of denying minimum wages, overtime wages,

and spread of hours wages, this Court should allow plaintiffs' counsel to send notice to potential

opt-in plaintiffs.

## POINT III

**SINCE PLAINTIFFS HAVE DEMONSTRATED THAT OTHER SPICE DELIVERY PERSONNEL ARE ENTITLED TO ACCURATE AND TIMELY NOTICE OF THIS COLLECTIVE ACTION, THIS COURT SHOULD GRANT PLAINTIFFS' REQUEST FOR PRODUCTION OF CONTACT INFORMATION FOR EACH PROSPECTIVE COLLECTIVE ACTION MEMBER TO ENSURE PROMPT AND ACCURATE NOTIFICATION OF SUCH POTENTIAL PLAINTIFFS.**

Since plaintiffs have shown that other Spice delivery personnel are entitled to notice of this

collective action, the Court should also grant plaintiffs' request for production of each potential

plaintiffs' contact information to ensure timely and accurate notice reaches these potential

plaintiffs. Krueger v. New York Telephone Co., 1993 WL 276058, at *1 (S.D.N.Y. July 21, 1993).

To facilitate the notice process in FLSA actions, courts regularly order employers to provide

plaintiffs with the name and available contact information of putative class members.  In Krueger,

the court explained that, "[t]he Supreme Court's decision in Hoffmann-LaRoche, Inc. clearly

authorizes and, in fact, advocates that the district court exercise its discretion early in the litigation

to permit discovery of the names and addresses of discharged employees to ensure that such

potential plaintiffs are promptly and accurately notified." (Id., at *1 (citing Hoffman-LaRoche, Inc.

v. Sperling, 493 U.S. 165, 110 S. Ct. 482 (1989))).

Accordingly, plaintiffs respectfully request that the Court order Spice to provide plaintiffs

with the name, address, and where possible, telephone number, of all potential class members.

**Introduction to Federal Rule 23 class certification argument: the requirements**

Plaintiffs move to certify a class action under Fed. R. Civ. P. 23(a) and 23(b)(3) for their

claims for Spice's denial of minimum wages, overtime wages, and spread of hours wages under

New York labor laws. <u>See</u> N.Y. Lab. Law §§ 650 *et seq.*; 12 N.Y.C.R.R. § 137-1.7 (2005). A class

seeking certification must first meet the four prerequisites of Rule 23(a)(l)-(4) – the class must be

so numerous that joinder is impracticable; the class must share a common question of law or fact;

the claims of the class representatives must be typical of the claims of the class as a whole; and the

class representatives must adequately protect the interests of the entire class. Fed. R. Civ. P. 23(a).

    Finally, plaintiffs must satisfy the requirement of Rule 23(b)(3).  Rule 23(b)(3) is satisfied

when common questions of law or fact "predominate over any questions affecting only individual

members, and … a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

    In <u>Mentor v. Imperial Parking Sys., Inc.</u>, this Court recently explained that courts must

determine "that every Rule 23 requirement" is met before certifying a class. 246 F.R.D. 178 at 182

(S.D.N.Y. 2007) (citing <u>In Re Initial Public Offering Sec. Litig.</u>, 471 F.3d 24, at 41 (2d Cir. 2006)).

Importantly, however, Rule 23 is to be construed liberally, <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, at

377 (2d Cir. 1997).  In fact, "courts are to adopt a standard of flexibility" in deciding whether to

grant class certification. <u>Id.</u>

    Additionally, when considering a motion for class certification, the Court should consider

the allegations in the complaint as true.  <u>Hirschfeld v. Stone</u>, 193 F.R.D. 175, 182 (S.D.N.Y. 2000)

(citing <u>Shelter Realty Corp. v. Allied Maintenance Corp.</u>, 574 F.2d 656, 661 n. 15 (2d Cir. 1978)).

**POINT IV**

**SINCE THE 25 PLAINTIFFS ARE SIMILARLY SITUATED TO AT LEAST
35 OTHER POTENTIAL PLAINTIFFS, THE CLASS IS SUFFICIENTLY
NUMEROUS TO SATISFY THE NUMEROSITY REQUIREMENT OF RULE
23, AND JOINDER OF ALL PLAINTIFFS IS IMPRACTICABLE.**

    Since there are probably at least 60 potential plaintiffs, the class satisfies the numerosity

requirement of Rule 23(a).  <u>Newman v. RCN Telecom Services, Inc.</u>, 238 F.R.D. 57, 72 (S.D.N.Y.

14

2006). This large number of plaintiffs, combined with the fact that many no longer work at Spice and are likely geographically dispersed, and the fact that prospective class members are low-wage earners, makes joinder impracticable. Class sizes in excess of forty generally satisfy the numerosity requirement in Rule 23(a). Id. In addition, a court need not determine a precise calculation of the number of class members and it is permissible for the Court to rely on reasonable inferences drawn from available facts. Id.; see also Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); Hirschfeld v. Stone, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (finding numerosity where plaintiffs *estimated* 150 to 170 class members.)

In this case, 25 employee plaintiffs have already committed to this action, and plaintiffs have provided affidavits that attest to as many as 100 additional prospective plaintiffs that would qualify. Furthermore, in discussions as between counsel for plaintiffs and the New York State Attorney General's office, which is conducting its own investigation concurrently with this present action, plaintiffs are led to believe that the prospective class far exceeds the 40 person threshold. Furthermore, the proposed class includes former employees who worked for Spice during either the three-year period attributed to willful violations under the FLSA, or six-year period preceding the filing of the complaint. This will greatly expand the number of potential class members. Accordingly, the class members are sufficiently numerous to warrant class certification.

Moreover, joinder here is impracticable because most plaintiffs, and probably most prospective class members, no longer work for Spice, making their whereabouts difficult to establish. Moreover, most class members have minimal financial resources, and a limited command of English. Importantly,

> "[i]mpracticable does not mean impossible," and the "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers. . . Relevant

considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members."

Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (citations omitted).

The prospective class here includes former Spice employees "whose whereabouts may be difficult to ascertain." Tennie v. City of New York Dep't of Soc. Servs., 1987 WL 6156, at*3-4 (S.D.N.Y. Jan. 30, 1987). Second, while employed by Spice, the plaintiffs and prospective class members generally made less than $30,000 per year. Based on that salary, they are "economically disadvantaged, making individual suits difficult to pursue." Robidoux at 936 (2d Cir. 1993). Additionally, in circumstances where potential class members currently work for the defendant employer, courts have noted that "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 89 (E.D.N.Y. 1989).

Accordingly, as the number of class members is likely at least 60, the class is sufficiently numerous and the circumstances do not leave joinder as a practical alternative, the class meets the Rule 23 standard for numerosity.

**POINT V**
**PLAINTIFFS SATISFY THE COMONALITY REQUIREMENT OF RULE 23 SINCE ALL PLAINTIFFS SHARE COMMON QUESTIONS OF LAW AND FACT REGARDING SPICE'S POLICIES OF DENYING MINIMUM WAGES AND OVERTIME PAYMENTS, AND VIOLATING THE SPREAD OF HOURS WAGE ORDER.**

Plaintiffs and prospective class members share common questions of law and fact regarding Spice's policies of denying minimum wages, overtime wages, and spread of hours wages, and therefore, plaintiffs satisfy the commonality requirement of Rule 23(a). Courts have "liberally construed the commonality requirement to only require one issue common to all class members."

16

Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (citations omitted); quoted by Mentor v. Imperial Parking, 246 FRD at 182 (S.D.N.Y. 2007) (finding commonality based upon affidavits, examples of modified improper time cards, and antidotal evidence); see also, Marisol A. at 376 (2d Cir. 1997) ("[t]he commonality requirement is met if plaintiffs' grievances share a common question of law or fact.").

Here, plaintiffs' affidavits demonstrate that Spice had a common policy of denying minimum wages, overtime wages, and spread of hours wages to the prospective class. Moreover, most differences among the workers, such as amount of overtime and spread of hours wages owed, primarily affects damages, not liability.  See Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield, 938 F. Supp. 1131 (E.D.N.Y. 1996) (holding that variation in amounts owed to class members does not preclude class certification)(citations and internal quotations omitted); see also, Nathan Gordon Trust v. Northgate Exploration, Ltd., 145 F.R.D. 105, 108 (S.D.N.Y.1993) ("[w]hile there may be a later issue as to damages for these [class members], they are still proper members of a plaintiff class.").

Since all potential class members were subject to Spice's common, unlawful policy of denial of minimum wages, overtime wages, and spread of hours wages, plaintiffs have made the requisite showing to establish commonality of their NYLL and associated local claims, as required by Rule 23(a).

## POINT VI

**SINCE EACH CLASS MEMBER'S CLAIM ARISES FROM THEIR PERIOD OF EMPLOYMENT WITH SPICE, AND EACH CLASS MEMBER WAS LIKELY DENIED PAY THAT THEY WERE OWED BY SPICE, PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLASS**

Since each class member's claim arises from their period of employment with Spice, and because each class member was likely denied pay that they were owed by Spice, plaintiffs' claims

are typical of the class's claims.  In order to meet the typicality requirement, plaintiffs must demonstrate that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001) (internal quotation omitted); In re Drexel Burnham Lambert, 960 F.2d 285, 290 (2d Cir. 1992).

The typicality factor does not require an "identical" factual background for all class members, but only requires "that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) (citation and internal quotation omitted); see also Robidoux, 987 F.2d 931, 936-7 (2d Cir. 1993) ("[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class…the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims.").  As in the commonality inquiry, "a difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality."  Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).

Here, all of the class members were subject to a sufficiently similar policy by Spice that, inter alia, (1) systemically categorized employees improperly so as to evade minimum wages requirements, (2) ignored or evaded payment of overtime premiums, (3) ignored minimum wages requirements, (4) ignored posting and notice requirements, (5) ignored or willfully evaded accurate and appropriate recordkeeping and accounting requirements, and (6) failed to pay spread of hours wages.  All of these policies violate New York labor laws. See N.Y. Lab. Law §§ 650 et seq.; 12 N.Y.C.R.R. § 137-1.7 (2005).

Slight differences in job responsibilities between the self-serving categorization by Spice of their employees (i.e. as "delivery" persons when such persons were employed in a variety of tasks) does not defeat typicality because "[r]ule 23(a)(3) does not require that named plaintiffs share the precise job title or qualifications of every class member." Meyer v. MacMillan, 95 F.R.D. 411, 414 (S.D.N.Y. 1982) (certifying class that included both professional and clerical workers).

Consequently, because plaintiffs' claims arise out of the same unlawful conduct as the claims of the class (Spice's policy of denying minimum wages, overtime wages, and spread of hours wages), and because plaintiffs' legal claims are nearly identical to the prospective claims of the class (Spice's violations of New York labor laws concerning minimum wages, overtime wages, and spread of hours wages), plaintiffs' claims are typical of the class.

**POINT VII**

**SINCE PLAINTIFFS' CLAIMS, LIKE THE CLAIMS OF THE CLASS, ARISE UNDER NEW YORK MINIMUM WAGES, OVERTIME, AND SPREAD OF HOURS LAWS, AND CLASS COUNSEL HAVE SUBSTANTIAL EXPERIENCE IN LABOR CASES SIMILAR TO THE PRESENT CASE, PLAINTIFFS ADEQUATELY REPRESENT THE CLASS.**

Plaintiffs' claims and the prospective class's claims arise under New York minimum wages, overtime, and spread of hours laws. Since proposed class counsel have substantial experience litigating labor law cases similar to the case at bar, plaintiffs adequately represent the class. Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Adames, 133 F.R.D. 82, 90 (E.D.N.Y. 1989). Since plaintiffs' claims are essentially identical to those of the rest of the class as delivery people not having been paid minimum wages, overtime wages, or spread of hour wages, there are no antagonistic interests that go to the subject matter of the suit. See id. at 91 (rejecting the defendant's argument that "personnel at different employment levels may have antagonistic interests").

19

If class certification is granted, Rule 23(g) provides that the Court must appoint class counsel. To that end, the Court should consider the following:

(1)    The work counsel has done in identifying or investigating potential claims in the action;

(2)    Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

(3)    Counsel's knowledge of the applicable law; and

(4)    the resources counsel will commit to representing the class.

See Velez v. Majik Cleaning Serv., Inc., 2005 WL 106895 (S.D.N.Y. Jan. 19, 2005) (plaintiff's law firm appointed as class counsel). Here, class counsel are experienced litigators who have successfully maintained numerous FLSA cases, and have considerable experience in labor law cases similar to the case at bar. In fact, counsel has represented plaintiffs in over 50 FLSA and NYLL lawsuits. Ex. V, ¶¶ 3, 4, 6—8. Finally, plaintiffs' counsel have agreed to advance all costs of this litigation with the proviso that plaintiffs reimburse class counsel for all expenses, whatever the outcome of the litigation. Ex. V, ¶ 9. Furthermore, plaintiffs' co-counsel is a well-recognized lawyer with significant collective action and class action experience. Eikenberry Aff. ¶¶ 11, 21.

Accordingly, it is clear that "class counsel is qualified, experienced and generally able to conduct the litigation." In re Drexel Burnham Lambert, 960 F.2d 285, 291 (2d Cir. 1992).

## POINT VIII

**SINCE SPICE'S FAILURE TO PAY MINIMUM WAGES, OVERTIME WAGES, AND SPREAD OF HOURS WAGES IS AN ISSUE COMMON TO ALL CLASS MEMBERS, AND ALL CLASS MEMBERS' CLAIMS ARISE DIRECTLY FROM THIS ISSUE, IT PREDOMINATES OVER ANY VARIANCE IN INDIVIDUAL CLASS MEMBERS' DAMAGES, THEREFORE, THE COURT SHOULD GRANT CLASS CERTIFICATION.**

Since the class members' claims arise from conduct common to all class members – namely, Spice's failure to pay minimum wages, overtime wages, and spread of hours wages –

common issues of law and fact predominate, and plaintiffs satisfy Rule 23(b)(3).  Rule 23(b)(3) requires a plaintiff to demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." Id. (citing General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 (1982) (typicality under Rule 23(a) and commonality under Rule 23(b)(3) tend to merge)).

Furthermore, in wage-and-hour cases, the issues regarding whether the employer's compensation policies violate federal or state law predominate over questions affecting only individual class members.  Mentor v. Imperial Parking, 246 F.R.D. 178, 184 (S.D.N.Y. 2007). Similarly, in Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007), the court held that common questions predominated where there was some factual variation among the class members, and the issues were whether the class members were entitled to minimum wages and overtime payments.  Moreover, the fact that damages will vary for each class member does not require that the class action be terminated as being beyond the scope of Rule 23(b)(3). [7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (1998).]

Here, plaintiffs satisfied the typicality requirement under Rule 23(a) because their claims, along with each class member's claims arise out of Spice's violations of New York labor laws regarding Spice's failure to pay minimum wages, overtime wages, and spread of hours wages. Additionally, here, as in Iglesias-Mendoza, the issues are whether plaintiffs were entitled to receive minimum wages, overtime wages, and spread of hours wages. Iglesias-Mendoza, 239 F.R.D. 363 (S.D.N.Y. 2007).  As the court in Iglesias-Mendoza held, "[t]hese are about the most perfect questions for class treatment." 239 F.R.D. 363, 373 (S.D.N.Y. 2007).

Accordingly, the common question of whether Spice's policies violated New York labor laws predominates in this case, and the Court should grant class certification under Rule 23(b)(3).

**POINT IX**

**SINCE PLAINTIFFS ARE UNLIKELY AND UNABLE TO PURSUE INDIVIDUAL CLAIMS, AND COURTS FAVOR CLASS ACTIONS WHERE, AS HERE, PLAINTIFFS HAVE LIMITED RESOURCES AND A LIMITED COMMAND OF ENGLISH, A CLASS ACTION IS SUPERIOR TO ANY OTHER METHOD OF ADJUDICATION.**

Since plaintiffs are unlikely and unable to pursue individual claims because of their limited resources and limited command of English, a class action is superior to any other method of fair and efficient adjudication.  Rule 23(b)(3) sets forth a non-exhaustive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims into a particular forum. Torres v. Gristede's Operating Corp., 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006); see In re Omnicom Group, Inc. Securities Litigation, 2007 WL 1300781, at *8 (S.D.N.Y. May 1, 2007) (denying class certification on manageability grounds is disfavored by courts and "should be the exception rather than the rule.") (citation omitted).

Furthermore, where the majority of the plaintiffs are low-wage earners with limited resources and a limited command of English, class treatment is the superior alternative.  In Iglesias-Mendoza, 239 F.R.D. 363, 373 (S.D.N.Y. 2007), the court held:

> The superiority requirement is easily satisfied on the facts of this case. The proposed class members are almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system. It is extremely unlikely that they would pursue separate actions.

(citing McBean v. City of New York, 228 F.R.D. 487, 503 (S.D.N.Y. April 27, 2005) ("[a]lthough the assumed socioeconomic status of the proposed class members ... is likely to

22

preclude a significant portion of the class from burdening the courts with individual claims, this ... argues in favor of class action treatment to protect the rights of class members.")).

Here, several factors support plaintiffs' superiority argument. No class members have yet filed separate actions (except for a Spice employee who was a waiter and not a delivery person. Counsel hereby represents to the Court that the waiter will be seeking to withdraw his opt-in status without prejudice; plaintiffs number 25 without him.) It is desirable to concentrate the litigation in one forum because for most class members, individual litigation costs would likely exceed any gains from overtime or spread of hours wage recovery. Moreover, individual plaintiffs here, as in Iglesias-Mendoza, lack the financial resources to conduct a thorough examination of Spice's timekeeping and compensation practices and to vigorously prosecute a lawsuit to recover damages. Indeed, the individual plaintiffs are low-income wage earners with few resources, and, because the class members are immigrants, they have a poor command of English.

Perhaps more importantly, a situation of possible intimidation exists in this case, "since some class members are still employees of [d]efendants', they may fear reprisal and would not be inclined to pursue individual claims." Torres, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006). They are, therefore, unlikely to litigate their claims on an individual basis.

Thus, because individual plaintiffs lack the ability to bring separate claims, and it is desirable to concentrate the litigation in a single forum to pool plaintiffs' resources and to allow plaintiffs to seek a remedy for Spice's unlawful conduct, this class should be certified under Rule 23(b)(3).

## POINT X

**SINCE THE FEDERAL AND STATE LAW CLAIMS IN THIS CASE ARISE FROM SPICE'S POLICIES AND PRACTICES OF DENYING ITS DELIVERY PERSONNEL MINIMUM WAGES, OVERTIME WAGES, AND SPREAD OF HOURS WAGES, IN THE INTEREST OF JUDICIAL**

**ECONOMY, AND TO REDUCE THE CHANCE OF INCONSISTENT FINDINGS, THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NEW YORK LABOR LAW CLAIMS.**

The federal and state law claims in this case arise out of the "same case or controversy" as they involve the identical issue of whether Spice paid plaintiffs minimum wages, overtime wages, or spread of hours wages; therefore, this Court should exercise supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  See Duchene et al. v. Michael L. Cetta, Inc., d/b/a/ Sparks Steak House, 244 F.R.D. 202, 204 (S.D.N.Y. 2007) ("there appears to be no sound policy reason why a New York State action should not be permitted to proceed as a class action along with the FLSA proceeding…courts in the Second Circuit routinely certify class action in FLSA matters so that New York State and federal wage and hour claims are considered together.") (citing Ansoumana v. Gristedes Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001)); Torres, 2006 WL 2819730, at *11).

In fact, "[a] federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while not automatic, is a favored and normal course of action," Iglesias-Mendoza, 239 F.R.D. 363, 374 (S.D.N.Y. 2007) (quoting Promisel v. First American Artificial Flowers, 943 F.2d 251, 254 (2d Cir.1991)) (applying pendent jurisdiction in FLSA collective class action to Rule 23 class action over NYLL claims).

Therefore, because Spice's failure to pay its delivery people minimum wages, overtime wages, and spread of hours wages presents identical issues of law and fact for the federal and state law claims, and because there is a small chance of inconsistent findings, and there are significant benefits of furthering judicial economy, this Court should exercise supplemental jurisdiction over the NY labor law claims.

## IV.    Conclusion

Plaintiffs respectfully request that this Court grant plaintiffs' motion (i) to certify a collective action under the FLSA § 216(b), (ii) to approve and facilitate circulation of a notice of pendency and consent to join to similarly situated employees currently or formerly employed by Spice pursuant to 29 U.S.C. § 216(b); (iii) to compel Spice to furnish the names and last known physical addresses of the "similarly situated" individuals in the proposed collective action; and (iv) for class certification of claims under the NYLL pursuant to Rule 23(a) and (b)(3).

Respectfully submitted,

May 21, 2008

_____/s/_____                    _____/s/_____
Michael A. Faillace [MF-8436]                        Peter G. Eikenberry [PE-7257]
MICHAEL FAILLACE & ASSOCIATES, P.C.                  74 Trinity Place, Suite 1609
110 East 59th Street, 32nd Floor                     New York, NY 10006
New York, New York 10022                             Telephone: (212) 385-1050
Telephone: (212) 317-1200

*Attorneys for Plaintiffs*

John A. Karol
Robert C. Ruhlin
*Of Counsel*

Nathaniel Arden
*On the Brief*