UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARLON CASTRO, OCTAVIO RANGEL, MARTIN
VASQUEZ, ALFREDO MARTINEZ, RODOLFO
MENDEZ, GERARDO ANGULO, JUAN MARTINEZ,
JOSE CERVANTES, SERGIO SANCHEZ, ISRAEL
SANCHEZ, MARTINE PEREZ, GUILLERMO MENDOZA,
OMAR CASTILLO and AMANDO MARTINEZ,
individually and on behalf of others similarly situated,

                                      Plaintiffs,                07 CV 4657 (RWS)

                                                                ECF CASE

                 -against-

SPICE PLACE, INC., SPICE AVE., INC., BANGKOK
PALACE II, INC., SPICE CITY, INC., SPICE WEST, INC.,
KITLEN MANAGEMENT, KITTIGRON LIRTPANARUK
and YONGYUT LIMLEARTVATE,
                                      Defendants.
------------------------------------------------------------------------X

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR COLLECTIVE ACTION AND CLASS CERTIFICATION

Lipman & Plesur, LLP

Co-Counsel for Defendants
The Jericho Atrium
500 North Broadway
Suite 105
Jericho, NY 11753-2131
516-931-0050

Law Office of Richard E. Signorelli

Co-Counsel for Defendants
799 Broadway, Suite 539
New York, NY 10003
212-254-4218

# TABLE OF CONTENTS

I. Preliminary Statement .................................................... 1

II. Statement of Relevant Procedural History and Facts ....................... 1
    A. Relevant Procedural History ......................................... 1
    B. Statement of Facts .................................................. 2

III. Argument ................................................................ 4
    A. Plaintiffs' Motion is Not Supported by Any Admissible Evidence and Should Be Denied ......................................... 4
    B. A Collective Action Is Not Appropriate since the Defendants Are Not a Joint Employer and There Was No Common Policy or Plan ..................... 5
    C. A Class Action May Not Be Certified under Both NY Law and the Federal Rules ............................................................. 7
        1. A Rule 23 Class Action May Not Be Brought under the NYLL Where Plaintiffs Seek Liquidated Damages ............................. 7
        2. Plaintiffs Do Not Meet Any of the Rule 23 Requirements for Class Action Certification .................................................... 8
            a. Numerosity ............................................. 9
            b. Commonality .......................................... 9
            c. Typicality and Adequacy ............................... 9
            d. Superiority ........................................... 10
            e. Adequacy of Class Counsel ............................. 11
    D. Supplemental Jurisdiction Should Be Denied as the Attorney General Has Asserted Authority over the New York Labor Law ....................... 11
    E. If the Court Rules That a Notice Should Be Sent, it must Be Easily Understood ........................................................... 12

IV. Conclusion ............................................................. 13

**I.      Preliminary Statement**

Plaintiffs have thrown a wrench in the wage-hour settlement tentatively reached between defendants and the Office of the New York State Attorney General ("OAG") with this motion, which was filed days after the tentative settlement.[1] This motion for collective action and class certification should be denied since it has and will continue to thwart a resolution of this matter. Further, this action should not be certified as a collective action because: (1) Plaintiffs have sued five restaurants and others without any basis for asserting that they should be jointly liable; (2) The restaurants did not have the same labor policies during the applicable time period; and, (3) Counsel for Plaintiffs have already presumably solicited and signed up most of the delivery workers. Plaintiffs' request for class certification should be denied because: (1) A class action for New York Labor Law ("NYLL") claims cannot be brought where liquidated damages under the NYLL are sought, as is the case here; (2) A class action cannot bind separate corporations and individuals where there is no evidence that they operate as a single employer; and, (3) Plaintiffs are unable to overcome the burden of meeting any of the Rule 23 requirements.

**II.     Statement of Relevant Procedural History and Facts**

   **A.      Relevant Procedural History**

The OAG declared jurisdiction over this matter in or about September 6, 2005 by issuing a Subpoena Duces Tecum Ad Testificandum. (Copy attached to Lipman Affirmation). The Subpoena was brought pursuant to New York "Executive Law § 63(12) for alleged violations of Labor Law § 652 et al., and relevant regulations, 29 U.S.C. § 207 for failure to pay minimum and overtime premium wages ..." Under the New York State Executive Law, the OAG has been investigating defendant restaurants under both the NYLL and the federal wage-hour law, the FLSA. Thousands of pages of documents as well as documents in electronic form have been produced by defendants as part of the OAG investigation. Defendants, through counsel, have met and/or spoken

---

[1] The Attorney General and defendants are still both hoping to reach a resolution in this matter.

with at least eight attorneys representing the OAG regarding this OAG investigation during dozens of meetings and conference calls. The OAG maintains that it is best suited to investigate and adjudicate this matter since it involves multiple, independent entities.

Plaintiffs herein seek to circumvent the OAG's investigation and imminent settlement by filing the instant collective and class action motion, despite the fact that there has been no Rule 26(a) discovery, Rule 26(f) conference, Rule 26(f)(3) Discovery Plan or any discovery taken in this case. Plaintiffs assume that all of defendants are in some sort of partnership without any factual basis. Plaintiffs have brought this action with no supporting admissible evidence since the purported supporting affidavits are in English, a language admittedly not understood by plaintiffs, with no verification by a translator.

The OAG has, at least informally, intervened in this case for the purpose of settlement and met with this Court to address settlement terms. The United States Department of Labor has also audited the wage-hour practices of at least one of the defendant restaurants and facilitated a settlement with respect to that restaurant covering some of the period also covered by the Complaint. Finally, the New York State Department of Labor recently commenced an investigation of defendant restaurants.

The OAG and putative Class Counsel, as may be gleaned from letters each has written to the Court, are engaged in a turf war at the expense of defendants. Putative Class Counsel is: (1) trying to maximize a recovery for 28 individuals while ignoring clear precedent which requires that these individuals waive claims to NYLL liquidated damages prior to attempting to certify a NYLL class action; (2) relying on putative class representatives who have lost all credibility by telling a different story about the hours that they worked to the OAG and grossly exaggerating this purported work time in non-admissible supporting affidavits; and (3) ignoring facts and law to try to bind defendants together.

B.  **Statement of Facts**

Plaintiffs provide no credible and/or admissible evidence in support of its motion. Plaintiffs' counsel submits multiple affidavits, in English, from affiants it admits have "minimal command of English." Further, the affidavits do not address any common labor policy which is in violation of the FLSA during the two or three year period that individuals have to opt-in to a collective action. In fact, the affidavits evidence that the restaurants did not have common wage-hour practices, and that individual restaurant's policies and practices changed over time. The affidavits identify different policies at different restaurants. For example, the affidavits state that some restaurants paid in cash while others paid by check. Some restaurants had punch cards while others did not. Some restaurants had a 40-hour worktime limit while others did not. See Affidavits D, E H, I, J, K, O, and Q attached to the Eikenberry Affidavit.

Affidavits attached as Exhibits B, C, and F are signed by individuals who purported to opt-in to this action more than two or three years after they stopped working for one or more of defendants, therefore, the statute of limitations would bar their opting into this case. For example, Humberto Otclita (Exhibit B) purports to have opted-in to this case on June 4, 2007 and signed his affidavit on April 12, 2008, but he admits that he stopped working for a restaurant located on Second Avenue in July 2004. Humberto Badillo Morales (Exhibit C) worked until March 2005, and did not try to opt-in until March 13, 2008. Caterino de los Santos (Exhibit F) stopped working in November 2004 and may have filed a consent form in June 2007 under a similar name, Catarino de los Santa.

The corporate defendants do not have identical owners - and, except for two restaurants, each has a different corporate president. Aff. Lirtpanaruk ¶ 3. The corporate defendants did not co-mingle funds. Aff. Lirtpanaruk ¶ 4. The corporate defendants had different labor practices which changed over time during the relevant time period. For example, there was no uniformity at the individual restaurants with respect to schedules, policies regarding non-meal break times, recording time and other wage-hour practices. Aff. Lirtpanaruk ¶ 5. The individual defendants relied on General Managers and outside consultants to comply with the wage-hour laws

and did not directly handle day-to-day operations at any of the defendant restaurants. The General Manager for each defendant restaurant was in charge of many of the wage-related practices at his or her restaurant. Aff. Lirtpanaruk ¶ 7.

In the Complaint, plaintiffs allege a willful violation under the NYLL (Fourth Cause of Action) in order to seek liquidated damages. Liquidated damages under New York law are specifically requested in Paragraph E of the Complaint's Prayer For Relief. Plaintiffs liquidated damages claim is reconfirmed in the present motion on page 2.

### III. Argument

#### A. Plaintiffs' Motion is Not Supported by Any Admissible Evidence and Should Be Denied

Plaintiffs' supporting affidavits are inadmissible as they are not knowingly executed and are also largely hearsay. Plaintiffs admit on page three of their brief that the only evidence they have of "Spice's policies as to payment to delivery people are illustrated in the following summaries of the affidavits of fifteen plaintiffs..." These are presumably the same individuals admitted on page 15 of plaintiffs' brief to have "minimal command of English." "Witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator." Trapaga v. Central States Joint Bd. Local 10, 2007 WL 101785 (N.D.Ill. 2007) (citing Jack v. TransWorld Airlines, Inc., 854 F. Supp.654, 659 (N.D. Cal. 1994) (citing FED.R.EVID. 604 and 901). Therefore, these affidavits are all inadmissible since there is no evidence that they were knowingly executed because there was no translator verification.

It is also certainly suspect that all of the affidavits seem to be primarily boilerplate except when different wage-hour practices are admitted. Further, pages 3-5 of plaintiffs' brief set forth what the affiants claim others experienced at one or more defendant restaurants. This evidence is inadmissible hearsay. Sjoblom v. Charter Communications, LLC, 2007 WL 4560541

4

(W.D.Wis. 2007)(striking affidavits in wage–hour action where affidavits not based upon affiants' personal knowledge, constitute or rely on hearsay, contain conclusory allegations, speculation and unsupported personal beliefs or directly and materially conflict with affiants' deposition testimony). As such, plaintiffs are left with completely unsupported allegations which are insufficient to support the instant motion.

> B. **A Collective Action Is Not Appropriate since the Defendants Are Not a Joint Employer and There Was No Common Policy or Plan**

Plaintiffs have not presented **any** legal or factual basis to hold defendants jointly and severally liable. The Complaint alleges that defendants act in partnership with one another and are lumped together as "Spice Group." Complaint ¶¶ 2 and 3. There is no such partnership and no Spice Group. Aff. Lirtpanaruk ¶ 9. Each restaurant being sued has different owners. Each restaurant is a different corporation. Aff. Lirtpanaruk ¶ 3. The Affidavits attached to plaintiffs' motion admit that the affiants did not simultaneously work for more than one restaurant. In order for the eight defendants to be held responsible as a joint employer, plaintiffs would have to prove that all of the defendants had the power to control the individuals who would be invited to opt-in to this action and that there is a common policy at issue that violated the FLSA during the relevant time period. Specifically, in order to lump all the defendants together as some kind of joint employer, plaintiffs would first have to provide admissible evidence that each of the defendants, with respect to all purported similarly situated employees: (1) had the power to hire and fire; (2) supervised and controlled work schedules or conditions of employment; (3) determined rate and method of payment; and (4) maintained employment records. Herman v. RSR Sec. Services Ltd., 172 F.3d 132 (2d Cir. 1999). There is no evidence whatsoever that the individual defendants were sufficiently involved in labor issues to be deemed a joint employer. For example, the individual defendants were not generally involved with hiring, firing, supervising (except for General Managers and Chefs) or controlling work conditions. Aff. Lirtpanaruk ¶ 10. Further, they were not responsible for maintaining employment records. Aff. Lirtpanaruk ¶ 11. Also, the General Managers determined

some of the wage practices at each restaurant. Aff. Lirtpanaruk ¶ 8. There is simply no basis in law or fact to deem all of defendants as a joint employer in this case. Therefore, a single collective action against multiple defendants may not be certified.

Even if this Court is able to bundle the different corporate restaurants with different owners and separate bank accounts into one jointly and severally liable "group," the Court must still find a common policy or plan that violated the FLSA during the past two years - or three years if plaintiffs prove a willful violation. Morales v. Plantworks, Inc., 2006 WL 278154 (S.D.N.Y. 2006)(denying conditional certification based upon plaintiffs' mere conclusory allegations and failure to show a common policy or plan). Plaintiffs' own affidavits demonstrate, if they constitute acceptable evidence (and they clearly do not), that there was no such common policy. The affidavits claim different policies that went into effect at different restaurants in 2005 and 2006. See Affidavits Generally. The purported "policies" stated in the Complaint also contradict the alleged policies in the affidavits. For example, were the employees paid in cash (Complaint ¶ 42) or by check after February 2006 as claimed by Jorge Rosa in his affidavit, paragraph 12, or was it in 2005 as claimed in Marlon Castro's affidavit, paragraph 11? Were punch cards used in March 2006 as claimed by Israel Sanchez in his affidavit, paragraph 19 or in 2002 as claimed by Jose Castillo in his affidavit, paragraphs 3 and 12? These discrepancies which are admitted to by plaintiffs prove that the individual defendant restaurants had different policies and procedures which may not be lumped together in a collective action.

Plaintiffs' affidavits clearly admit that there were different policies in effect at different times at defendant restaurants. Even if the restaurants were owned by the same owner, there is no basis for having a collective action span across the restaurants where each restaurant admittedly had different policies at different times. Seever v. Carrols Corp., 528 F.Supp.2d. 159 (W.D.N.Y. 2007)(Burger Kings owned by Carrols Corp. not subjected to a collective action for alleged off-the-clock work based on the unilateral acts of managers); Morales v. Plantworks, Inc., 2006 WL 278154 (S.D.N.Y. 2006)(denying conditional certification based upon plaintiffs' mere

conclusory allegations and failure to show a common policy or plan); Barfield v. New York City Health & Hospitals Corp., 2005 WL 3098730 (S.D.N.Y. 2005)(denying certification where plaintiff provided "nothing but limited anecdotal hearsay to suggest that there is widespread practice"); Moeck v. Gray Supply Corp., 2006 WL 42368 (D. N.J. 2006)(denying certification where plaintiffs failed to establish that putative class were victims of a "single policy, decision or plan" where plaintiffs had only shown that one supervisor required workers to work "free time"); Diaz v. Electronics Boutique of America, Inc., 2005 WL 2654270 (W.D.N.Y. 2005)(denying conditional class certification, finding no common policy and no evidence that alleged practice was the same at other stores and potential claims to be "too individualized to warrant collective action treatment").

Plaintiffs have wholly failed to show that the defendants are one super-employer for the purposes of this lawsuit. In fact, although plaintiffs' argue "conditional certification is routinely granted under similar circumstances" they cite only one case in support. The Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178 (S.D.N.Y. 2007) case is clearly distinguishable in that it dealt with parking garages that transferred employees among locations in an attempt to avoid the wage-hour laws. Even plaintiffs do not make this argument to support their motion. See Plts Brief p. 11. Further, the Mentor case was not contested on the single entity/joint employer issue, by contrast to the instant case in which defendants vigorously deny they can or should be deemed one defendant/employer.

Further, the purpose of a collective action is to facilitate similarly situated workers to pursue their common claims. Even if there were similarly situated workers, putative Class Counsel appear to need no assistance in signing up individuals to opt-in to this case. Currently, there are 28 individuals who have opted-in to this case. It does not appear that plaintiffs need assistance in getting more opt-ins by having a collective action certified since it is likely that they located all the potentially similarly situated workers who could be found.


### C. A Class Action May Not Be Certified under Both NY Law and the Federal Rules

#### 1. A Rule 23 Class Action May Not Be Brought under the NYLL Where Plaintiffs Seek Liquidated Damages

It is well settled that NYLL claims may not be certified as a class action under Rule 23 where liquidated damages are sought. Foster v. Food Emporium, 2000 WL 1737858 (S.D.N.Y. 2000); Dornberger v. Metropolitan Life Ins. Co., 182 F.R.D. 72 (S.D.N.Y. 1998); N.Y. C.P.L.R. § 901(b). In plaintiffs' Complaint, liquidated damages under the NYLL are specifically demanded. Defendants' Twenty-Third Affirmative Defense contained in the Answer provides that "Plaintiffs are not entitled to class certification because NY law does not authorize class action relief for claims seeking liquidated damages." Notwithstanding this Affirmative Defense, plaintiffs' reiterated their demand for liquidated damages under the New York Labor Law in their Memorandum of Law in Support. Plts' Brief at p. 2. Therefore, a class action may not be certified.

#### 2. Plaintiffs Do Not Meet Any of the Rule 23 Requirements for Class Action Certification

Plaintiffs fail to meet the standards applicable for Rule 23 certification and so this motion must be denied. The Second Circuit recently clarified the standards and methods by which a district court is to determine whether plaintiffs seeking class certification have met their Rule 23 burdens. In re Initial Public Offering Securities Litigation, 471 F.3d 24 (2d Cir. 2006). Specifically, the Second Circuit requires that the district court undertake a "rigorous analysis" in order to determine whether each of the Rule 23 requirements are met. Such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met." Id. at 41. In making such findings, it is not sufficient that there be "some showing" by plaintiff that the requirements are met. Id. at 42. Instead a "district judge is to assess all of the relevant evidence…just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." Id. This includes weighing "conflicting evidence" where it exists. Id..

The putative class meets none of the Rule 23 requirements, each of which plaintiffs have the burden of proving. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); In re Initial Public Offering Securities Litigation, 471 F.3d 24, 41 (2d Cir.2006).

### a. Numerosity

Plaintiffs' allegations regarding numerosity are solely based on the assumption that all the restaurants can be lumped together and Eikenberry's affidavit which states in paragraph 4: "Upon information and belief, the New York State Attorney General conducted an audit of Spice's payment practices; documents in possession of the New York State Attorney General suggest that the total number of plaintiffs is more than 60." As stated above in Section III.A., plaintiffs should not be able to meet a Rule 23 requirement with inadmissible hearsay. Further, each of the defendants' restaurants is small and individually could not meet the numerosity requirement. (There are five restaurants named as defendants and Eikenberry's affidavit asserts a total of approximately 60 putative class members between all the restaurants.). Plaintiffs seek to lump together small, independent, separately incorporated restaurants with admittedly different labor policies in order to meet Rule 23's numerosity requirement. There is no evidence that the numerosity requirement will be met with respect to any one restaurant and therefore there is no evidence that it is appropriate to lump these restaurants together to meet the numerosity requirement.

### b. Commonality

To prove commonality, courts require more than self-serving affidavits and a plaintiff generally must provide either statistical or anecdotal evidence. Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82 (S.D.N.Y. 2006). Even if plaintiffs' inadmissible affidavits are considered, they demonstrate different policies and contradictory statements with respect to recordkeeping, method of payment, and limits on hours worked. (*See*, Section III.B. above.)

### c.     Typicality and Adequacy

Plaintiffs/putative class representatives have a conflict representing the putative class since they seek liquidated damages under the NYLL and would have to seek to amend the Complaint and waive their rights to such liquidated damages in order to possibly have typical claims and possibly be able to adequately represent the putative class. It is not in the best interest of any plaintiff to do so, especially since the Attorney General is seeking relief for these same putative class members. Further, Courts should consider whether the proposed plaintiffs are providing reliable and accurate information before determining whether they may be adequate class representatives. Jones v. Ford Motor Credit Co., 2005 WL 743213 (S.D.N.Y. 2005). Apparently, the plaintiffs provided very different information regarding their work hours to the Attorney General and their private counsel as evidenced by the allegations found in the Complaint and their individual affidavits submitted with this motion. These "factual discrepancies" were referenced in putative Class Counsel Faillace's March 24, 2008 letter to the Court. Plaintiffs' credibility is in serious doubt since, *inter alia*, their alleged work hours were grossly inflated by plaintiffs after meeting with the Attorney General and in conjunction with plaintiffs' counsel's representation of each of them. Plaintiffs altered recollection of their work hours puts their credibility in serious doubt. Similarly, some of the supporting affidavits claim no wage-hour poster in 2006 and others claim there were such posters. See, *e.g.*, Rosa's and Castillo's affidavits. Also, every affidavit states that the affiant was never informed about a tip credit despite the fact that the notices about the tip credit have been posted. The purported class representatives are simply not credible. Further, as discussed above, putative Class Counsel's failure to provide translator verifications for the putative class representatives renders such purported representatives inadequate as well. Lastly, since there were different wage-hour related practices at each restaurant, it is unclear how any putative class representatives can be typical of the putative class.

### d. Superiority

Since plaintiffs may recover less than they seek in the Complaint if they are class members in that liquidated damages would be unrecoverable if this case were certified as a class action, a class action would not be superior. Myers v. Hertz Corp., 2007 WL 2126264 (E.D.N.Y. 2007) (class action denied because plaintiffs would have to waive NYLL liquidated damages claims to proceed on a class basis). Further, the Attorney General had intervened in this case for the purpose of settlement. The OAG presumably has the superior expertise and experience to settle this case. The Attorney General has years invested in investigating the defendants in this case and had reached a tentative settlement with defendants days before this instant motion was filed. Additionally, plaintiffs convoluted, incomprehensible 14-page class notice is proof that plaintiffs do not have a "superior" method of resolving this case. Muecke v. A-Reliable Auto Parts & Wreckers, Inc., 2002 WL 1359411 (N.D. Ill. 2002)(rejecting Rule 23 class since it would not be "superior to other available methods" of adjudication where FLSA opt-in was in place, choosing not to extend the litigation to absent class members who did not choose to opt in).

### e. Adequacy of Class Counsel

Defendants understand that putative class counsel have never been certified as class counsel in a Rule 23 wage-hour class action. In assessing the adequacy of Class Counsel, Rule 23(g) requires the Court to consider, *inter alia*, that putative class counsel has never been certified as Class Counsel in this type of case. Further evidence that putative Class Counsel are not adequate are their fatal flaws of: (1) simultaneously seeking class certification and NYLL liquidated damages and (2) lumping together multiple defendants as a partnership without any admissible evidence.

By denying class certification, the Court still allows the putative class members to seek relief through the OAG.

### D. Supplemental Jurisdiction Should Be Denied as the Attorney General Has Asserted Authority over the New York Labor Law

Pursuant to 28 U.S.C. § 1367(b)(4), this Court has discretion to deny supplemental jurisdiction over the NYLL claims "in exceptional circumstances...for compelling reasons." Since

11

the OAG has invested years investigating the same claims present in this case, the New York Department of Labor is currently seeking thousands of documents and interviewing all of the restaurant employees, and the OAG's executive powers are not limited by Rule 23, this seems to be the unusual case where supplemental jurisdiction should be denied pursuant to subsection four's exceptional circumstances and compelling reasons exception to supplemental jurisdiction. Further, this Court should refuse supplemental jurisdiction over plaintiffs' Rule 23 State law claims under the doctrine of abstention. The Supreme Court long ago established that federal courts may decline to exercise their jurisdiction under certain circumstances where denying a federal forum would clearly serve an important countervailing interest City of Chicago v. International College of Surgeons, 522 U.S. 156, 174, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); Colorado River Water Conservation District et al. v. United States, 424 U.S. 800, 818-20, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)(abstention warranted by considerations of "proper constitutional adjudication...regard for federal-state relations...or...wise judicial administration").

In fact, there is well-established precedent to invoke the abstention doctrine in a variety of circumstances. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971)(pending state criminal proceeding); Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200 (1975)(state civil proceedings); Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643 (1941)(resolution of a federal constitutional question might obviate if the state courts were given the opportunity to interpret ambiguous state law); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070 (1959)(cases intimately involved with the States' sovereign prerogative); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070 (1943)(resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes); Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380 (1935)(duplicative of a pending state proceeding).

In the instant matter, this Court should invoke the abstention doctrine since the New York State Attorney General already has a pending investigation into this matter. The OAG has

issued subpoenas, taken depositions, conducted on-site investigations and drafted settlement papers. In fact, the OAG was wrapping up its matter and about to settle it when plaintiffs' counsel decided to file this case. This court should abstain from jurisdiction on the OAG's pending matter, which obviates plaintiffs' Rule 23 motion herein.

      **E.**      **If the Court Rules That a Notice Should Be Sent, it must Be Easily Understood**

Plaintiffs' proposed Notice contains legal errors and is very convoluted. It certainly is not easily understood as required by Rule 23(c)(2)(B). Further, the putative Notice fails to address the binding affect of a judgment under Rule 23(c)(3) as required by Rule 23(c)(2)(B).

Plaintiffs provide no legal basis for claiming that individuals may opt-in to the case if they worked after June 1, 2004. Individuals must opt-in within two years (three for a willful violation) of working for the employer alleged to have violated the FLSA. 29 U.S.C. § 255. Further, no opt-out notice was attached to plaintiffs' papers, although such a notice was referenced. Defendants request an opportunity to provide input regarding a proposed Notice if and when the Court decides that a notice must be sent.

## IV. Conclusion

Defendants respectfully request that this Court deny plaintiffs' motion in all respects and award defendants attorneys' fees and costs and such other relief as the Court deems proper.

Dated: Jericho, New York
July 17, 2008

                                    LIPMAN & PLESUR, LLP

By: _____/s/_____

Robert D. Lipman (RL 3564)
David A. Robins (DR 5558)
Co-Counsel for Defendants
500 North Broadway, Suite 105
Jericho, NY 11753
Telephone:   516-931-0050
Facsimile:   516-931-0030
E-mail:  Lipman@lipmanplesur.com


Richard E. Signorelli (RS 7976)
Law Office of Richard E. Signorelli
Co-Counsel for Defendants
799 Broadway, Suite 539
New York, NY 10003
Telephone:   212-254-4218
Facsmile:   212-254-1396
E-Mail:  rsignorelli@nycLITIGATOR.com