**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
MARLON CASTRO, OCTAVIO RANGEL,
MARTIN VASQUEZ, ALFREDO MARTINEZ,
RODOLFO MENDEZ, GERARDO ANGULO, JUAN
MARTINEZ, JOSE CERVANTES, SERGIO
SANCHEZ, ISRAEL SANCHEZ, MARTINE PEREZ,    **ECF Case**
GUILLERMO MENDOZA, OMAR CASTILLO, and
AMANDO MARTINEZ, individually and on behalf of    **FLSA § 216(b) Collective**
others similarly situated,                          **Action**

                              *Plaintiffs*,    **FRCP Rule 23 Class**
                                                                        **Action**
                          -against-
                                                                     **07 CV 4657 (RWS)(DFE)**

SPICE PLACE, INC., SPICE AVE., INC.,
BANGKOK PALACE II, INC., SPICE CITY, INC.,
SPICE WEST, INC., KITLEN MANAGEMENT,
KITTIGRON LIRTPANARUK, and YONGYUT
LIMLEARTVATE,

                              *Defendants*.
----------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR COLLECTIVE ACTION AND CLASS CERTIFCATION**

**Preliminary statement**

Although defendants claim that plaintiffs have thrown "a wrench in the…settlement tentatively reached between defendants and the office of the New York State Attorney General," plaintiffs' counsel is informed by lawyers from that office that the settlement positions between defendants and the office have widened substantially because of new evidence of defendants' continuing violations of law.[1] Defendants' letter of June 17, 2008, to Your Honor admits that an "agreed-upon" settlement fell apart because it was not approved by higher officials at the Attorney General's office. (Ex. Z)

Since there is documentary evidence that the corporate employer defendants are jointly operated, *e.g.*, a pay stub verifying that one plaintiff was paid by three different defendant entities during one week (Ex. S), defendants at best raise a question of fact as to joint operation. Since plaintiffs waive their claim for liquidated damages under the New York State Labor Law (Eikenberry aff. ¶8)—there is no ground to deny certification of this action as a collective and class action.

**Defendants' misleading or inaccurate statements and plaintiffs' corrections**

**Defendants' misleading and inaccurate statement #1**: **"**[T]he affidavits [of plaintiffs] evidence that the restaurants did not have common wage-hour policies, and that individual restaurant's policies and practices changed over time. The affidavits identify different policies at different restaurants. For example, the affidavits state that some restaurants paid in cash while others paid by check. Some restaurants had punch cards while others did not. Some restaurants had a 40-hour worktime limit while others did not." (Defs. memo in opposition, p. 3).

\* \* \*

"The purported 'policies' stated in the Complaint also contradict the alleged policies. For example, were the employees paid in cash (Complaint ¶42) or by check after February 2006 as claimed by Jorge Rosa in his affidavit, paragraph 12, or was it in 2005 as claimed in Marlon Castro's affidavit, paragraph 11? Were punch cards used in March 2006 as claimed by Isreal Sanchez in his affidavit, paragraph 19 or in 2002 as claimed by Jose Castillo in his affidavit, paragraphs 3 and 12?" (Defs. memo in opposition, p. 6).

---

[1] See reply affidavit of Peter G. Eikenberry, sworn to on July 24, 2008 ("Eikenberry aff.")

**Plaintiffs' correction**: Plaintiffs' affidavits confirm that the various Spice corporations did have common wage hour policies. For instance, the Spice corporations paid all plaintiffs cash until some time in late 2005 or early 2006, when Spice began paying plaintiffs by check. (Ex. D at ¶12, Ex. E at ¶8, Ex. G at ¶12, Ex. H at ¶7, Ex. I at ¶11, Ex. K at ¶9, Ex. N at ¶12, Ex. 0 at ¶16). Plaintiffs' individual recollections differed only as to the exact date when Spice switched to payment by check. For example, delivery persons at Spice's University Place location variously estimated that the switch occurred in "February or March 2006" (Ex. 0 at ¶16, Ex. G at ¶12), "in or about January 2006" (Ex. N at ¶12), and "approximately 2005" (Ex. I at ¶11).

Plaintiffs who worked at different locations stated that the Spice corporations recorded their hours by punch card until approximately 2005 before switching to a swipe card system. (Ex. I at ¶11, Ex J at ¶¶11-13, Ex. K at ¶¶13-16, Ex. O at ¶¶26-28, Ex. R at ¶¶31-34). Jose Castillo does not state that this change occurred in 2002—as defendants' argue—but rather stated, consistent with other plaintiffs, that Spice began using the swipe cards "sometime in 2005". (Ex. H at ¶13).

Plaintiffs who worked at different locations also offered sworn statements that in approximately February 2006, the Spice corporations began limiting delivery persons to 40 hours per week at a single location. (Ex. D at ¶15, Ex. E at ¶23, Ex. G at ¶14, Ex. N at ¶20, Ex. O at ¶19, Ex. P at ¶18). Until approximately May 2006, plaintiffs could work additional hours in excess of 40 per week at other Spice locations—for which they were issued separate paychecks with different social security numbers. (Ex. D at ¶16, Ex. E at ¶24, Ex. G at ¶¶15-17, Ex. N at ¶¶21-26, Ex. O at ¶19-20, Ex. P at ¶19).

**Defendants' misleading or inaccurate statement #2:** "The affidavits attached to plaintiffs' motion admit that the affiants did not simultaneously work for more than one restaurant."

**Plaintiffs' correction**: Many plaintiffs worked at more than one Spice location during the same week because Spice managers did not permit them to work more than 40 hours per week at a single location after approximately February 2006. (Ex. D at ¶¶15-16, Ex. E at ¶¶23-24, Ex. G at ¶¶14-17, Ex. N at ¶¶20-26, Ex. O at ¶19-20, Ex. P at ¶¶18-19). Some plaintiffs also worked at 2-3 different locations during their employment with Spice. (Ex. I at ¶¶3-4, Ex J at ¶¶3-4, Ex. K at ¶¶3-4).

**Defendants' misleading or inaccurate statement #3**: "The *Mentor v. Imperial Parking Systems, Inc.* case is clearly distinguishable in that it dealt with parking garages that transferred employees among locations in an attempt to avoid the wage-hour laws. Even plaintiffs do not make this argument to support their motion." (Defs. memo in opposition, p. 7)

**Plaintiffs' correction**: The facts alleged by plaintiffs are, in fact, very similar to those in *Mentor*. In *Mentor*, the employees submitted affidavits "asserting that Defendants had a policy of denying overtime pay to parking attendants, which they concealed by, *inter alia*, transferring employees between garages and issuing separate W-2s for work performed in different locations." Similarly, beginning around February 2006, Spice forced plaintiffs to work a few days a week at one Spice location under one social security number, and work the remaining few days at a different Spice location under another social security number arbitrarily supplied by Spice. (Ex. D, ¶ 15; Ex. E, ¶¶ 23, 24; Ex. G, ¶¶ 14—16; Ex. M, ¶¶ 8, 9, 12; Ex. O, ¶¶ 18, 19; Ex. N, ¶¶ 20, 21; Ex. P, ¶ 17; Ex. Q, ¶¶ 30, 31, 33; Complaint ¶ 42).

**The argument**

## POINT I

**SINCE PLAINTIFFS HAVE WAIVED THEIR CLAIMS FOR LIQUIDATED DAMAGES UNDER NEW YORK LABOR LAW, THIS COURT MAY GRANT CLASS ACTION CERTIFICATION**

Since plaintiffs have waived their claims for liquidated damages under New York Labor Law, this Court may grant class action certification of their New York Labor Law claims. *See e.g., Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 374 (S.D.N.Y. 2007.)

Although N.Y. C.P.L.R. §901(b) prevents plaintiffs from pursuing claims for liquidated damages as class actions, plaintiffs may pursue wage-and-hour class actions if they waive their claims for liquidated damages under New York Labor Law. *Id.*; *Klein v. Beck*, 2007 U.S. Dist. LEXIS 51465, *8-9; *Smellie v. Mount Sinai Hospital*, 2004 U.S. Dist. LEXIS 24006, *15-16 ("It is well within the range of permissible and strategic choice for a plaintiff to choose to join a class action seeking actual damages only, rather than undertake the efforts and transactional costs of seeking to pursue an individual action for actual and liquidated damages.")

Plaintiffs have waived their claims for liquidated damages under New York Labor Law, and this Court should grant class certification for their New York State claims.

## POINT II

**SINCE PLAINTIFFS' AFFIDAVITS WERE PROPERLY TRANSLATED AND DO NOT CONTAIN HEARSAY, THEY ARE ADMISSIBLE**

Since plaintiffs affidavits were drafted and executed with the assistance of competent translators and do not contain hearsay, they are admissible. *See Jack v. Transworld Airlines, Inc.*, 854 F.Supp, 654, 659 (N.D.Cal 1994); *Trapaga v. Central States Joint Bd. Local*, 2007 U.S. Dist. LEXIS 23438, *23-25 (N.D.Ill 2007); Fed. R. Evid. 801.

Defendants complain that plaintiffs' affidavits did not contain a translator verification. The two cases from other jurisdictions cited by defendants involved affidavits that were originally written in Spanish and then translated, in writing, to English. The documents were stricken because the plaintiffs failed to provide evidence that the written translations were accurate and because the documents were improperly executed or altered after execution. *Jack v. Transworld Airlines, Inc.*, 854 F.Supp, 654, 659 (N.D.Cal 1994); *Trapaga v. Central States Joint Bd. Local*, 2007 U.S. Dist. LEXIS 23438, *23-25 (N.D.Ill 2007). In contrast, plaintiffs' affidavits were drafted and properly executed in English with the assistance of attorneys of plaintiffs whose native language is Spanish, the native language of plaintiffs. (*See* affidavits of Michael Faillace and Yolanda Rivero, sworn to on July 23, 2008).

The facts set forth in plaintiffs' affidavits are not hearsay as they are not statements of other persons. *See* Fed. R. Evid. 801. Plaintiffs' affidavits state, for example:

> When I was at Spice, I met 15 other delivery men who had the same schedule and non-delivery duties as I did. (Ex. M at ¶17).
>
> When I worked at the Spice restaurant on Second Avenue, there were a total of three delivery men who worked the same hours as I did; at Spice Chelsea, there were a total of five delivery men; and at Spice University, there were a total of five delivery men. (Ex. K at ¶5).
>
> During my employment, there have been at least nine other delivery boys who have worked the same hours and who have the same additional responsibilities that I have at Sea 2nd Avenue without being paid for the hours they have worked over 40 per week. (Ex. P at ¶12).
>
> During the last 7 years, there have been at least 10 other delivery persons who worked the same schedule and had the same responsibilities that I have had at Spice University. (Ex. O at ¶12).
>
> All other delivery persons, including Humberto Badillo, Jorge Rosas, Ramiro Lopez, Caterino de los Santos, and Jose Castillo, had to prepare food, stock the storage room, clean the kitchen and work the same hours as I did. (Ex. B at ¶9)

The other delivery persons at 1411 Second Avenue—including Ramiro Lopez, Martine Perez, Jose Castillo, Humberto Otlica, Jorge Rosas, Caterino de los Santos—had the same additional duties and worked the same hours as I did. (Ex. C at ¶9).

All the delivery persons had the same responsibilities I had as a delivery person—including food preparation, stocking samples, cleaning, and deliveries. (Ex. E at ¶29).

The other delivery persons at 60 University—including Octavio Rangel, Rodolpho Mendez, Amando Mendez, Juan Martinez, Gerardo Angulo, Marlon Castro, Epidio (last name unknown), Marcos (last name unknown), Mario (last name unknown)—worked the same schedule and had the same additional responsibilities that I had. (Ex. G at ¶9).

The above statements in plaintiffs' affidavits are based on personal observations made by plaintiffs during the many hours that they worked at the Spice restaurants, and are not inadmissible hearsay. Therefore, plaintiffs' affidavits should be admitted in support of their class action and collective action claims.

## POINT III

**SINCE THE SPICE CORPORATIONS HAVE OPERATED AS A SINGLE ENTERPRISE BY, *INTER ALIA*, ESTABLISHING COMMON PAYROLL POLICIES AND REQUIRING THE SAME EMPLOYEES TO WORK AT VARIOUS LOCATIONS, PLAINTIFFS' MOTION FOR CLASS AND COLLECTIVE ACTION CERTIFICATION SHOULD BE GRANTED**

Since the Spice corporations have operated as a single enterprise by, *inter alia*, establishing common payroll policies and requiring the same employees to work at various locations, all delivery persons employed at Spice corporations should be considered as one group in determining factors such as "numerosity" and "commonality," and plaintiffs' motion for class and collective action certification should be granted. *See* 29 U.S.C. § 203(r)(1); *United States v. Stanley*, 416 F.2d 317, 318-319 (2nd Cir 1969).

Separate business entities may be considered one "enterprise" for purposes of the FLSA and New York Labor Law if the entities "1) engage in 'related activities,' 2) performed through

'unified operation' or 'common control,' 3) for a common business purpose." *Bowrin v. Catholic Guardian Soc'y.*, 417 F.Supp.2d 449, 458 (S.D.N.Y. 2006); 29 U.S.C. § 203(r)(1). Several businesses may be part of the same enterprise even if its activities "'are performed by more than one person, or in more than one establishment, or by more than one corporate or other organizational unit.'" *Id.* (quoting 29 C.F.R. 779.202). "Related activities" include the activities "of individual retail or service stores in a chain" 29 C.F.R. 779.206. "Unified operation" may exist when separate entities share employees, employ common managers, and have common payroll operations. *See United States v. Stanley*, 416 F.2d 317, 318-319 (2nd Cir 1969); *Donovan v. Beverage Express, Inc.*, 630 F.Supp. 402, 404 (N.D. Ohio 1985); *see also Mentor v. Imperial Parking*, 246 F.R.D. 178 at 181 (S.D.N.Y. 2007) (Conditional FLSA collective action granted where "[p]laintiff has presented declarations asserting that Defendants had a policy of denying overtime wages to parking attendants, which they concealed by, *inter alia*, transferring employees between garages and issuing separate W-2s for work performed in different locations.")

The Spice corporations had common wage and hour-related policies, including paying delivery persons in cash before switching to checks in early 2006, recording delivery persons' hours by punch card before switching to a swipe card system in 2005, limiting delivery persons to 40 hours per week at a single location after approximately 2006, and paying delivery persons less than the minimum wage. Many plaintiffs worked at more than one Spice location during the same week because Spice managers did not permit them to work more than 40 hours per week at a single location after approximately February 2006. Some plaintiffs also worked at 2-3 different locations during their employment with Spice. Plaintiffs noticed the depositions of defendants in order to learn more about the Spice corporations' business operations, but

defendants have refused to proceed with the depositions. (*See* defendants' letter to the Court dated July 3, 2008.)

Defendants' arguments against class certification under Rule 23 are largely based on the incorrect assumption that the Spice restaurants cannot be "lumped together" as a single enterprise. (*See* Defs. memo in opposition, pp. 9-10). Since the evidence demonstrates that the Spice corporations have acted as a single enterprise and have common payroll policies that have caused delivery persons at all Spice corporations to be underpaid, this Court should grant plaintiffs' motion for class and collective action certification.

## POINT IV

**SINCE SETTLEMENT TALKS BETWEEN DEFENDANTS AND THE ATTORNEY GENERAL HAVE BROKEN DOWN, THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' NEW YORK LABOR LAW CLAIMS**

Since settlement talks between defendants and the Attorney General did not result in any resolution, there are no exceptional circumstances warranting the denial of supplemental jurisdiction over plaintiffs' New York Labor Law claims. *See Itar-Tass v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2nd Cir. 1998); 28 U.S.C. §1367(c)(4).

28 U.S.C. §1367(c)(4) authorizes courts to decline supplemental jurisdiction in "exceptional circumstances." "The use of 'exceptional circumstances' indicates that Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual. In other words, declining jurisdiction outside the ambit of 1367(c)(1)-(3) appears as the exception rather than the rule." *Itar-Tass v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2nd Cir. 1998).

The Attorney General's investigation of defendants does not constitute an exceptional circumstance warranting the denial of supplemental jurisdiction.  Attorneys at the Attorney General's office have stated that the settlement positions between defendants and the office are widening substantially because of new evidence of defendants' continuing violations of law.  Defendants admit, in their letter to the Court of June 17, 2008, that a potential settlement fell apart because it was not approved by higher officials at the Attorney General's office.  Therefore, this Court should exercise supplemental jurisdiction over plaintiffs' New York Labor Law claims.

**Conclusion**

Plaintiffs respectfully request that this Court (i) certify a collective action under the FLSA §216(b), (ii) approve and facilitate circulation of a notice of pendency and consent to join to similarly situated employees currently or formerly employed by Spice pursuant to 29 U.S.C. § 216(b); (iii) compel Spice to furnish the names and last know physical addresses of the "similarly situated" individuals in the proposed collective action; and (iv) certify this action as a class action for claims under the NYLL pursuant to Rule 23(a) and (b)(3).

July 24, 2008

|  |  |
|---|---|
| Michael A. Faillace | ___/s/ Peter G. Eikenberry____ |
| MICHAEL FAILLACE & ASSOCIATES, P.C. | Peter G. Eikenberry (7257) |
| 110 East 59th Street, 32nd Floor | 74 Trinity Place, Suite 1609 |
| New York, New York 10022 | New York, NY 10006 |
| Telephone: (212) 317-1200 | Telephone: (212) 385-1050 |

*Attorneys for plaintiffs*

John A. Karol
Robert C. Ruhlin
*Of Counsel*

Nathaniel Arden
*On the Brief*