UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARLON CASTRO, OCTAVIO RANGEL, MARTIN VASQUEZ, ALFREDO MARTINEZ, RODOLFO MENDEZ, GERARDO ANGULO, JUAN MARTINEZ, JOSE CERVANTES, SERGIO SANCHEZ, ISRAEL SANCHEZ, MARTINE PEREZ, GUILLERMO MENDOZA, OMAR CASTILLO, and AMANDO MARTINEZ, individually and on behalf of others situated,

            *Plaintiffs,*

   -against-

SPICE PLACE, INC., SPICE AVE., INC., BANGKOK PALACE II, INC., SPICE CITY, INC., SPICE WEST, INC., KITLEN MANAGEMENT, KITTIGRON LIRTPANARUK, and YONGYUT LIMLEARTVATE,

            *Defendants.*

Docket Number 07-CV-4657 (RWS)(DFE)

**DECLARATION OF JUNO TURNER, ESQ.**

STATE OF NEW YORK  )
                        ) ss:
COUNTY OF NEW YORK )

      JUNO TURNER, ESQ., hereby deposes and states the following under penalty of perjury:

      1.    I am an Assistant Attorney General in the Labor Bureau of the Office of Andrew M. Cuomo, the Attorney General of the State of New York. I was assigned to investigate the defendants and therefore am familiar with the facts set forth in this affidavit. I make this affidavit based on my personal knowledge and information and records obtained by the Office of the Attorney General during its investigation of the defendants. I make this affidavit in support of the Attorney General's Motion for a Protective Order and To Quash the Subpoenas.

      2.    Defendant corporations are the owners/operators of several Asian restaurants. According to records maintained by the Labor Bureau, the Attorney General opened an

investigation of defendants in June 2005 to determine whether Defendants had committed violations of New York or Federal labor law. I was assigned to the investigation in approximately April of 2007. Currently the investigation remains open.

3. During the course of the investigation, pursuant to a subpoena issued by the Office of the Attorney General, the Defendants produced approximately eleven boxes of documents.

4. In addition to documents produced by the defendants, the Attorney General's Office has obtained documents from other sources sufficient to fill two hanging file drawers. We obtained these documents in anticipation of potential litigation against the Defendants, and based on a judgment that such documents may assist the Attorney General in its investigation.

5. During the course of the Attorney General's investigation, the Labor Bureau has generated a variety of memoranda, audits, and other evaluations of the investigation, which are largely stored electronically. The authors of these documents are myself, Assistant Attorney General Seth Kupferberg, and former Assistant Attorneys General Lorelei Boylan and Jennifer Brand, who are no longer employed by the Office of Attorney General, and several interns employed by the Attorney General's Office during the course of the investigation. We have generated these documents as part of our investigation in anticipation of potential litigation against the Defendants. These documents evaluate such things as the evidence supporting a case against Defendants, Defendants' potential liability, and damages. They reflect our mental impressions, conclusions, opinions, and legal theories.

6. I have no first-hand knowledge of any alleged wrongdoing by Defendants or lack thereof. I can only evaluate the evidence that the Attorney General has obtained in the course of

its investigation. The Attorney General may institute litigation against the Defendants for violations of New York or federal labor law revealed in the course of the investigation, but that decision has not yet been made.

7. On June 16, 2008, I received, via mail, subpoenas issued by counsel for plaintiffs in this civil action, addressed to myself, former Assistant Attorney General Lorelei Boylan, and former Assistant Attorney General in Charge of the Labor Bureau Jennifer Brand. True and correct copies of the three subpoenas are attached hereto as Exhibits A, B, and C.

8. On June 13, 2008, and again on June 16, 2008, I received e-mails from Peter Eikenberry, Esq., counsel for plaintiffs herein, asking whether I would accept service of the subpoenas. True and correct copies of these e-mails are attached hereto as Exhibits D and E.

9. On June 16, 2008, I replied by email to Mr. Eikenberry, informing him that I would respond to his request once I had consulted with Ms. Boylan and Ms. Brand. A true and correct copy of this e-mail is attached hereto as Exhibit F.

10. On June 24, 2008, I faxed Mr. Eikenberry a reply, stating that I would accept service on behalf of myself and Ms. Brand. A true and correct copy of this letter is attached hereto as Exhibit G.

11. Following my acceptance of service of these two subpoenas, the Attorney General's Office determined that any objection to Mr. Eikenberry's subpoena would be better handled by the Litigation Bureau of the Office of the Attorney General with input from the Labor Bureau.

12. Plaintiffs in this civil action appear to be present and former employees of Defendants. The subpoena served on the Attorney General's Office seeks production of all

documents reviewed during the course of the Attorney General's Investigation. Over the course of this investigation, I have reviewed numerous documents, including all of the documents listed above, as well as numerous web pages, Westlaw cases, and other internal memoranda related to the policies of the Attorney General. I have probably reviewed numerous other documents in the past 17 months, since I was assigned to this case. I cannot say what then-Assistant Attorneys General Jennifer Brand and Lorelei Boylan may have reviewed while they conducted this investigation, but I am confident that they, too, reviewed numerous documents. The policy of the Attorneys General is for Assistant Attorneys General not to take investigative documents with them upon their departure from the Office of the Attorney General, and to the best of my knowledge, all investigative documents remain in the custody and under the control of the Office of the Attorney General.

13. The subpoena served on the Attorney General's Office seeks production of all electronic files related to the Attorney General's Investigation. Not only would it be extremely burdensome, if not impossible, to ascertain what electronic files might contain something in some way conceivably related to the investigation, but to the extent documents of this kind exist, they are of the same type already discussed in paragraphs 4 and 5 above: documents or summaries of documents gathered or prepared in anticipation of potential litigation and to assist the Attorney General's investigation, and memoranda, audits and other evaluations of the investigation.

14. On July 16, 2008, I, along with Assistant Attorneys General Joshua Pepper and Seth Kupferberg, met with Plaintiffs' counsel to confer about possible ways to resolve our disagreements about responding to the subpoenas. At that meeting, the Office of the Attorney

General took the position that because the Defendants had previously produced original documents to the Attorney General without retaining copies, we had no objection to producing to plaintiffs herein copies of such documents subject to any objections by the Defendants. However, the Attorney General advised that it would not produce its own work product or agree to a deposition for the purpose of revealing work product created during the investigation. Plaintiffs' counsel did not accept that arrangement, and we could not resolve our differences.

                                                        JUNO TURNER, ESQ.